CARTER'S ADMINISTRATORS, APPELLANTS, VS. CARTER ET AL., APPELLEES.

1. Money and evidences of debt are personal property and may be included in the selection of property exempt from any process of law, or from administration of assets to satisfy debts.

2. A waiver of any benefit of exemption laws, or an agreement that all the debtor's property shall be subject to levy and sale, contained in a promissory note, is inoperative as against the policy of the exemption laws.    Otherwise as to a mortgage or pledge of specific property.

3. When property which may be claimed as exempt from the satisfaction of debts has been sold or converted into funds by administrators, the heirs entitled may claim the value out of funds in the hands of the administrators.

4. Heirs are entitled to the same right of exemption of property that the ancestor had before his death.

5. An allowance by the Probate Court out of personal property for the temporary support of the heirs of the intestate must be accounted as part of the amount of personal property claimed by the heirs as exempt from the payment of debts.

Appeal from the Circuit Court for Jackson county.

The facts of the case are stated in the opinion.

*Benjamin S. Liddon* for Appellants.

*J. F. McClellan* and *F. B. Carter* for Appellees.

THE CHIEF-JUSTICE delivered the opinion of the court.

This is a bill filed in behalf of the children and heirs of F. M. G. Carter, who died in January, 1880, praying that the administrators set apart out of the personal estate, property and money to the amount of one thousand dollars as exempt from administration and from liability to pay the debts of the deceased.

The personal estate consisted of certain chattel property appraised at $634.34; notes of Tony Horne secured by mortgage on land, on which there was due in 1881 about $1,968; county script, not appraised, nominal value $87; and sundry notes and accounts due to deceased, amount not stated. The administrators took possession of all the property, and under the order of the County Court personal property of the value of two hundred dollars was set apart to the children "for one year's support." The residue of the property appraised, other than evidences of debt, was sold by the administrators for the sum of $469.23.

The notes and mortgage against Horne were foreclosed and the land bid off by the administrators in behalf of the estate, and this land was afterwards sold by them as assets of the estate and the proceeds so treated.

The bill was demurred to on the ground that notes, script, &c., were not such property as could be exempted under the Constitution from "forced sale," and therefore could not enter into the amount of personal property which can be claimed by the heirs to be exempt from administration as assets. The court overruled the demurrer and defendants answered that they bought in the property on the Horne mortgage for the nominal sum of $500, and that the mortgage covered only an undivided half of a mill site of four acres, the other half belonging to the estate. There was no other security for the money due on the note and mortgage and Horne is utterly insolvent. That they bought in the undivided half covered by the mortgage for the benefit of

the estate, and the same has since been sold under the order of the County Judge and only $240 realized therefor, out of which they claim the costs of foreclosure should be paid, exceeding eighty dollars.    There has been realized on notes due the estate only $32.50.    The Washington county script at 40 cents on the dollar was worth $34.36.    They further answer that there is an outstanding unpaid promissory note given by deceased in 1878 on which is due $318.18, and that in the body of the note it was agreed and stipulated by deceased that " should judgment be obtained against me on this note I hereby agree that all my real and personal estate and effects shall be subject to levy and sale in execution thereof to an amount sufficient to satisfy said judgment, hereby waiving and relinquishing all benefit of any law exempting such estate and effects or any part thereof from such levy and sale."    And defendants claim that this note should be paid out of the property without regard to the exemption law and submit that the waiver of the exemption contained in the note in law subjects all the property to its payment.

There was a replication filed and the cause was set down for hearing on bill, answer (original and amended) and replication.    The court suggested that before making a decree he wanted information not to be found in the papers. Thereupon counsel for the respective parties subscribed and submitted to the court a statement of the expenditures made in administering the estate, of claims paid and of claims not satisfied, not showing, however, what claims not paid are legally chargeable against the assets of the estate.

They annex a statement of assets as follows:

| | |
|---|---:|
| Rent, mill and farm, 1880 | $308.00 |
| Balance on orange grove, Calhoun county | 349.68 |
| Rent, mill and farm, 1881 | 601.00 |
| Rent, mill and farm, 1882 | 175.00 |
| Sale lands | 803.09 |

Carter's Administrators v. Carter et al.—Opinion of Court.

| | |
|---|---|
| Rent of Turner Horne | 25.00 |
| Total | $2,261.77 |

#### SCHEDULE OF PERSONAL PROPERTY.

| | |
|---|---|
| Sales of personal property after deducting $200, year's support shown by answer | $469.23 |
| Amount Dekle note | 21.75 |
| Washington county script | 34.56 |
| Amount Tony Horne mortgage | 50.000 |
| Total | $1,025.54 |
| Total | $3,287.31 |

From the allegation of the pleadings and this statement of the assets the Chancellor concluded that there was enough estate, real and personal, to pay the note in which the exemption was waived and the expenses of administration after allowing the $1,000 exemption, and gave a decree for complainants that they recover of the defendants one thousand dollars with interest from the day of the commencement of this suit, and costs.

Defendants appealed from this decree.

The *first* error assigned is the overruling of the demurrer, and the question is, whether the heirs may claim as exempted from liability to payment of debts the notes and script and their proceeds as well as tangible goods and chattels. We understand that the property embraced in the inventory was household goods, farm implements, and the like.

It has heretofore been held that property which is exempt from seizure for the payment of debts is also exempt from liability and is not assets in the hands of an administrator subject to administration. Baker vs. State, 17 Fla., 406; Wilson Ex. vs. Fridenburg, 19 Fla., 461.

Article X, section 1, of our Constitution exempts from forced sale under any process of law one thousand dollars worth of personal property.

Evidences of debt and money due and to become due are property liable to taxation and to the process of garnishment and other legal and equitable process for the collection of debts, and are therefore regarded as personal property.

The Constitution of Arkansas contained homestead and exemption clauses similar to our own, and the Supreme Court of that State in Probst vs. Scott, 31 Ark., 652, held that choses in action were personal property and might be claimed as exempt from garnishment within the spirit of the constitutional exemption. Exemption laws are to be liberally construed in favor of their beneficent purposes.

Under similar clauses in the exemption laws of North Carolina choses in action were held to be subject to selections by the owner as property exempt from liability for debts. Frost vs. Naylor, 68 N. C., 325.

And money due from an insurance company may be claimed as exempt property. Strouse vs. Becker, 44 Pa. St., 206 ; Houghton vs. Lee, 50 Cal., 101. Money in bank may be selected as exempt from garnishment under a law exempting from execution or attachment a certain amount of property. Fanning vs. First Nat. Bank, 76 Ill., 53 ; Jones vs. Tracy, 75 Pa. St., 417.

The demurrer was properly overruled, not only because the personal chattels were exempt, but because an exemption may be claimed in money and choses in action as well as in other property. The object of the exemption clauses in the Constitution is to secure the debtor and his family against absolute poverty, and in case of his death to afford his heirs a limited amount for their support.

The *second* ground of error relates to an opinion filed by the Chancellor and doubtless shows one ground upon which the final decree is based, and may be considered in dealing with the decree.

The *third* ground is that the court erred in making the " waiver note," *i. e.*, the note in which the exemption is waived, a preferred claim against the estate as against other debts.

We cannot understand from the record what was the condition ot the estate, whether solvent or insolvent. There has been no final settlement of the administration. There is nothing showing what legitimate claims have been presented and allowed against the estate. The long accounts or " statements " filed are not clear on the subject. It must be said, however, that we do not think the " waiver note " has any preference to be paid out of assets not exempt. That note, if a subsisting claim against the estate, is to be paid in like manner as other debts, and if the assets of the estate are not sufficient to pay the debts in full it must be paid *pro rata* with other claims out of assets available and applicable to the payment of debts generally.

This note is not a *specific lien* on exempt property to any greater extent that it is upon the whole property.

We inquire then whether an agreement of this kind to waive all benefit and right of examination is valid in view of the policy of the exemption laws.

A mortgage of personal effects, to be effectual for any purpose, must be recorded or the possession of the property delivered to the mortgagee. Act of 1828.

Upon the question of waiving the right of exemption of personal property from levy and sale for the satisfaction of debts, Mr. Thompson, in his work on Homestead and Exemption, says the authorities are divided. He cites, however, the decision of Pennsylvania only to sustain the position that a waiver contained in a note like that under consideration is effectual. Several cases are referred to, but Case vs. Dunmore, 23 Pa. St., 94, is a leading case and gives the reasoning upon which they have established the rule.

Premising that the exemption of goods is a personal privilege which may be waived by the debtor by omitting to claim it at the proper time, the court says : " But, where at the time of contracting the debt he agrees to waive the benefit of the exemption, and this forms the ground of the credit given to him, the injustice of permitting him to violate his contract and thus to defraud his creditor is too palpable to need illustration or to require the aid of precedents to discountenance it. Notwithstanding the benevolent provisions of the statute in favor of unfortunate and thoughtless debtors, it was far from the intention of the Legislature to deprive the free citizens of the State of the right, upon due deliberation, to make their own contracts in their own way, in regard to securing the payment of debts honestly due. Creditors are still recognized as having some rights ; and it is not the intention of the Legislature to destroy them by impairing the obligation of contracts. It frequently happens that the creditor is more in need of public sympathy than the debtor. When a poor man is unjustly kept out of money due to him, the distress arising from the want of it is often greater than that caused to the other party by its collection. If the suffering was but equal, it is plain that one man should not suffer for the follies or misfortunes of another. Every one should bear his own burden. The statute which exempts debtors from the operation of this principle did not take away from them the right to waive the privilege thus conferred, whenever their consciences or their necessities prompted the waiver."

This rule was afterwards regretted by the Pennsylvania court in a later cause where Judge Woodward said : "Perhaps it would have been well if the court had set out by denying the capacity of the debtor to waive the statutory exemption in favor of *any* creditor. It might have been urged in support of such a view that the Legislature in-

tended a benefit to the family of the debtor rather than to the debtor himself; and that his caprice or will, tempted as they might be by the creditor, should not defeat the legislative benefaction in favor of those who were dependent upon him." Shelly's Appeal, 36 Pa. St., 373, 380.

The doctrine of the Pennsylvania courts is not favored in other States so far as we have been able to learn. In Alabama, a stipulation contained in a note whereby the maker waives all right to exemption is recognized in Brown vs. Leith, 30 Ala., 313, but an examination of the code of that State shows that such waiver is expressly authorized by it; and it is moreover held by the court that under the law of that State the right to claim an exemption is a privilege personal to the debtor and is not transmitted but dies with him.

In New York and other States it has been uniformly held that such a waiver was void, on the ground that the policy of the law was violated.

*New York:* "The statutes which allow a debtor, being a householder and having a family for which he provides, to retain, as against the legal remedies of his creditors, certain articles of prime necessity, to a limited amount, are based upon views of policy and humanity which would be frustrated if an agreement like that contained in these notes, entered into in connection with the principal contract, could be sustained. A few words contained in any note or obligation would operate to change the law between those parties, and so far disappoint the intention of the Legislature. If effect shall be given to such provisions, it is likely that they will be generally inserted in obligations for small demands, and in that way the policy of the law will be completely overthrown. Every honest man who contracts a debt expects to pay it, and he believes he will be able to do so without having his property sold on

execution. No one worthy to be trusted would, therefore, be apt to object to a clause subjecting all his property to levy on execution in case of non-payment. It was against the consequences of this over-confidence, and the remedies of men to make contracts which may deprive them and their families of articles indispensable to their comfort, that the Legislature has undertaken to interpose.    *    .*    * Before the passage of the exemption laws, contracts for the payment of money at a future time involved the consequence that all the debtor's property, without exception, might be taken on execution in case of default. By the statutes exempting certain property the Legislature, in effect, determined that it was expedient to allow contracts entailing such results; and this was done by providing that property of limited value should not be taken. Parties cannot now stipulate that their contracts shall have the same effect as under the former law, for that would be hostile to the policy thus established." Kneetle vs. Newcomb, 22 N. Y., 250.

*Kentucky:* " No one in this State is entitled to the benefit of the exemption laws but a housekeeper with a family, and the Legislature certainly intended by the enactment of such laws to provide more for the dependent family of the debtor than the debtor himself. Every honest man has a desire to fulfill all his obligations, and such are always willing to comply with the demands of a creditor by giving the latter any assurance he may exact as an evidence of his intention to pay his debt. The law in its wisdom, for the protection of the poor and needy, has said that certain property shall not be liable for debt, not so much to relieve the debtor as to protect his family against such improvident acts on his part as would reduce them to want. Such is the policy of the law; and their contract was made, not only in disregard of this policy, but to annul the law itself,

so far as it affected the debt sought to be recovered. If such a contract is upheld, the exemption law of the State would be virtually obsolete, and the destitute deprived of all claim they have to its beneficent provisions.   *   *   *  The right to plead the statute of limitations is a personal privilege; but will it be insisted that an agreement or promise never to plead the statute is binding? If so, the grocer and merchant, and all others engaged in the business affairs of life, would only have to agree with those who promise to pay, verbally or in writing, that the statute of limitations should never be relied on, or the claim to exempted property asserted, in order to render nugatory these wholesome laws, enacted for the peace and welfare of society and in accord with an enlightened public policy. A contract fraught with such consequences to the family of the debtor is totally at variance with public policy, and therefore void." Moxley vs. Ragan, 10 Bush, 158.

*Iowa:* "That the citizen or debtor may mortgage the identical property for the payment of the debt, does not at all conflict with the idea that he cannot waive the exemption of the statute in his contract of indebtment, because the statute itself has provided for the execution of valid mortgages, without limit as to the property mortgaged. In the case of a judgment creditor applying to the court or its officer for an execution, the court, by its clerk, following the language of the law, says to him, ' You may have the execution, but no exempt property shall be sold under it.' The creditor, however, says to the court, ' I will take your execution, but the debtor and myself have made a law for this case which will control your writ, and make it do what the law has declared it shall not do.' No court will permit parties thus to control its process, so as to defeat the statute or render nugatory its most beneficent provisions. Without pursuing the discussion of the subject fur-

ther in the opinion, we are agreed in the conclusion that a person contracting a debt cannot, by a contemporaneous and simple waiver of benefit of the exemption laws, entitle the creditor, in case of failure to pay, to levy his execution, against defendant's objection, upon exempt property. Such an agreement is contrary to public policy, and will not be enforced." Curtis vs. O'Brien, 20 Iowa, 376.

*Illinois:* In the case of Recht vs. Kelly, 82 Ill., 147, a note had been given expressly waiving the benefit of all laws exempting real or personal property from levy and sale. The court says: "The exemption created by the statute is as much for the benefit of the family of the debtor as for himself, and for that reason he cannot, by an executory contract, waive the provisions made by law for their support and maintenance. Such contracts contravene the policy of the law, and hence are inoperative and void. The owner may, if he chooses, sell or otherwise dispose of any property he may have, however much his family may need it, but the law will not aid him in that regard, nor permit him to contract in advance that his creditor may use the process of the courts to deprive his family of its benefit and use, when an exemption has been created in their favor. Laws enacted from considerations of public concern, and to subserve the general welfare, cannot be abrogated by mere private agreement." And see Phelps vs. Phelps, 72 Ill., 545.

*North Carolina:* A similar waiver at the foot of a promissory note under seal was attempted to be enforced in Branch vs. Tomlinson, 77 N. C., 8, and the court uses this language: " It may be assumed that the defendant, as he could sell the exempted property at any time or mortgage it, could waive his right at the time of the levy, and that a sale then made by the sheriff would pass the absolute title to the purchaser; but an agreement beforehand to do so,

being merely an executory agreement, in no way affects the title' which remains in the defendant until a sale, nor does it prevent him from disregarding his contract if he chooses to do so, and leave the plaintiffs to their action for damages. * * There is no description of property, no agreement to sell or make title to anything, so that specific performance is out of the case. The agreement is to waive a right in contravention of State policy, which agreement this court cannot undertake to enforce."

*Louisiana :* In Levicks vs. Walker, 15 La., 245, a stipulation in a contract waiving any relief from appraisement or valuation laws was held to be void.

We have been unable to find in reports, text books or digests, that it has been held anywhere except in Pennsylvania that a written agreement, contained in a note, to waive the right to claim an exemption of personal property from levy and sale to satisfy a judgment rendered on the note, has been sustained. And even in that State the court has expressed regret that a contract of that kind had ever been sustained and that such rule had become established as the law by the repetition of a bad precedent. True, a man may sell his personal property, or may pledge or mortgage it, but in that case the property sold or pledged is designated and identified and a special interest is created in favor of a creditor in the particular article pledged or mortgaged, and in no State is this power of the owner of personalty denied. The object of exemption laws is to protect people of limited means and their families in the enjoyment of so much property as may be necessary to prevent absolute pauperism and want, and against the consequence of ill advised promises which their lack of judgment and discretion may have led them to make, or which they may have been induced to enter into by the persuasions of others.

In this country especially where there happen to be many

illiterate and unsophisticated people it would be mischievous to encourage such agreement in which by the mere scratch of a pen the whole policy of the exemption laws would become nugatory. Such people, without reference to " race, color or previous condition," are and ought everywhere to be the wards of the State and to be protected accordingly.

When a man executes a mortgage or bill of sale upon certain specified property, the very nature of the transaction implies the exercise of discretion and the 'contemplation of inevitable consequences. Such contracts are, therefore, upheld as well in respect to real as to personal property. We have in several cases held that a sale under a mortgage is not a *forced* sale because it was a sale under consent given under seal and irrevocably conveying an interest in the thing described. Such contracts are regulated by law and are specifically enforced in courts of equity. And by such transactions men may, through misfortune, become impoverished and their families brought to want. This is an incident of all human transactions, even where the utmost caution and circumspection are exercised, but this is not an argument in favor of encouraging indiscreet contracts made with a view to an evasion of the settled policy of the State. Few men would mortgage their household goods and their children's clothes to a hard creditor with the inevitable result brought vividly to their understanding, but many thoughtless and improvident people might be induced to. obtain credit by merely " waiving the benefit of exemption," and thus placing the last blanket and bed and their own and the children's clothing at the mercy of a hard creditor, if an agreement like this should be sustained.

In view of the recognized policy of the States in enacting exemption laws and of the practically universal concurrence

of the authorities on the identical question, our conclusion is that the " waiver " of the benefit and protection of the exemption laws contained in this note is not valid to defeat a claim of exemption.

It is urged by appellants that the exemption ought not to be allowed because the claim of exemption was not made until after the property had been sold by the administrators and the proceeds had gone into the general fund in the process of administration.   To this it may be replied that it does not appear that these infants are chargeable with laches or that their guardian is so guilty.   F. M. G. Carter died in January, 1880, and this bill was filed in 1881. But it appears that the administrators have the funds in their hands undistributed and the " waiver note " is unpaid.

Another point is urged in argument, that Carter, the father of these minors, had not " taken or enjoyed the benfit of the exemption " in his lifetime.   We think he had enjoyed the benefit of the exemption because he had possessed and enjoyed the property and it had not been levied on or sold.   The heirs are entitled to the same benefit of exemption that the ancestor was entitled to.   Baker vs. The State, 17 Fla., 406.   The purpose of the exemption clause in the Constitution is to exempt in favor of the heirs so much property as would have been exempt to the ancestor.

The fourth and last ground of error is in decreeing one thousand dollars in favor of complainants.

The personal chattels were appraised at $634.34, of which $200 was allowed to the children for " support" and the residue sold for $469.23.   There was realized on a note $21.75.   The script was worth $34.56.   The Toney Horne mortgage being foreclosed, the administrators bid in the property at $500, and the same property was afterwards

sold by the administrators with other property for cash. We do not understand from the record what amount was realized by them from the sale of the land covered by the Horne mortgage, but whatever amount was so realized must be considered as the proceeds of the mortgage and must contribute toward the $1,000 allowed as exempted in favor of the children.

As to the allowance for the "support" of the children out of the chattel property, that must be included as a part of the allowance under the exemption claim. The account would then stand thus:

| | |
|---|---|
| Allowance to children........................................ | $200.00 |
| Appraised property sold for....... .......... ..... ....... | 469.23 |
| Collected on note..... ...................................... | 21.75 |
| County script, worth................................. ..... | 34.56 |
| | $725.54 |
| From this must be deducted the amount of a lien on a gin which was among the appraised property, which lien was paid by defendants, say................................... | $170.00 |
| Balance........................................ ................. | $555.54 |

Whatever amount was realized by the administrators on the land bought in under the Horne mortgage after paying the expenses of foreclosure, should be ascertained and added to the above balance, and a decree therefor, not exceeding $1,000, (less the $200 allowance,) with interest from the time of the commencement of this suit, entered.

It appears that a sale of other land was made under an execution for a deficiency after foreclosure of the Horne mortgage, and a controversy is pending in respect to the proceeds of this sale. Should the amount of $1,000 not be made up from the proceeds of the mortgaged property as above, and it should result that the execution sale for deficiency of the decree brings in a further sum, the court may make a further decree in favor of complainants as to the application of the same.

The decree is reversed and the cause remanded with directions for further proceedings in accordance with this opinion. Each party will pay his own costs in and about this appeal.