THIRZA SHEARON, GUARDIAN, APPELLEE, V. J. ARTHUR GOFF, APPELLANT.

FILED FEBRUARY 27, 1914.    No. 17,454.

1. **Homestead**: SELECTION: OCCUPANCY. Actual occupancy of lands or town lots, within the limits defined by statute, by a husband and wife at the time of the death of the fee-holding spouse will, in the absence of clear and satisfactory evidence to the contrary, be deemed a selection of the same from the separate property of the decedent spouse as the homestead of the husband and wife.

2. ———: DESCENT. And, under the provisions of section 17, ch. 36, Comp. St. 1911, such homestead, upon the death of the fee-holding spouse, vests, *eo instante*, in the surviving spouse for life, with remainder in the heirs of the fee-holding spouse, regardless of whether or not there are children to be provided for by the survivor.

3. ———: ———. During the life of the owner of the fee of a homestead the exempt character of the property depends upon its occupancy as a homestead; but upon the death of the fee-holding spouse a new title is created which vests, *eo instante*, in the survivor for life, individually and unconditionally, free from the right of the children of either spouse to a division of the income therefrom.

4. **Disaffirmance**. *Guthman v. Guthman*, 18 Neb. 98, examined, and the dictum appearing on page 106, discussed in this opinion, is expressly disaffirmed.

APPEAL from the district court for Jefferson county: LEANDER M. PEMBERTON, JUDGE. *Reversed with directions.*

95 Neb. 27

*Hartigan & Wunder* and *C. H. Denney,* for appellant.

*Heasty & Barnes, F. L. Rain* and *F. N. Prout, contra.*

FAWCETT, J.

Stella M. Goff, while the owner of the west half of the northwest quarter of section 27, township 3, range 2, in Jefferson county, died intestate, leaving her husband, defendant herein, and Bernice Hartman, her daughter by a former marriage, as her only heirs at law. At the time of her death she and the defendant were occupying the 80 acres of land above described as their homestead. It was incumbered by a mortgage of $1,650. Since the death of his wife defendant has been in possession of the property and has been receiving the rents and profits thereof. Plaintiff as guardian of Bernice instituted this suit in the district court for Jefferson county. She alleges, in substance, that Bernice is a minor under the age of 14 years, and is the owner in fee and entitled to the possession of the lands in controversy; that the estate of Stella M. Goff, deceased, has been fully administered and the administrator discharged, and prays that defendant may be required to account for the rents and profits since the death of Mrs. Goff; that the title may be quieted in Bernice, and that she be given possession of the premises. Defendant for answer and cross-petition alleges that the heirs of decedent are Bernice and himself, the former inheriting three-fourths and he one-fourth of the estate, subject to his homestead interest; denies that there is anything due the guardian out of the rents and profits; prays that plaintiff's petition be dismissed, that his homestead interest in the property in the sum of $2,000 be confirmed in him, that the interests of the parties be found as above set out, subject to his homestead interest, that the land be partitioned, if it can be equitably done, and, if not, that it be sold subject to the mortgage, and the present worth of the interest of each of the parties be determined and the money divided according to such interests. Honorable F. N. Prout was appointed guardian *ad litem* of Bernice, and as such filed a

reply and answer to the answer and cross-petition of the
defendant, in which he admits that at the time of Mrs.
Goff's death she and defendant occupied the land in suit,
but denies that the same was occupied as a homestead;
admits the mortgage; denies that defendant is entitled to
the control of the land by reason of the fact that it is a
homestead; alleges that Bernice has no property of any
character except the premises in controversy, and that her
guardian has supported, maintained and cared for her,
that if a homestead right exists the same is for the care,
nurture and protection of Bernice, and not for the use and
benefit of the defendant; admits the heirship of defendant
and Bernice in the proportions above stated; joins in the
prayer of plaintiff's petition, and further prays that the
court fully protect the rights of Bernice, and that, in the
event it should be determined that defendant has a right
of homestead, and that the same must be sold under a de-
cree partitioning the same, the full value of the homestead
be impounded by the court and ordered invested under its
direction, and the income devoted to the care, nurture and
maintenance of Bernice, and upon the death of defendant
turned over to her or her guardian, that three-fourths of the
remainder of the proceeds of the sale be disposed of for the
use and benefit of Bernice.  The district court found the
relationship of Bernice and defendant, and their inter-
ests in the fee simple title of the land, as above set out,
subject to the mortgage, and subject also to a homestead
right therein in favor of defendant, to the amount of
$2,000; that defendant by reason of his ownership of an
undivided one-fourth interest is entitled to partition; that
defendant is not the parent of Bernice, does not contribute
to her support, and is not entitled to the sole use and bene-
fit of the homestead interest in the premises, but should
share the same equally with Bernice.  A referee was ap-
pointed, and, he having reported that the premises could
not be equitably partitioned, the land was sold, subject to
the mortgage, for $2,857.  The case came on for hearing
on motion of plaintiff to confirm the sale.  A rule was en-
tered for all parties to show cause by 4 o'clock the same

day why the sale should not be confirmed. At that hour, no objections having been filed, the court entered an order confirming the sale, and ordering that the proceeds be applied, first, to the payment of the costs, including the fees of the guardian *ad litem* and referee; that out of the residue of the proceeds of the sale the homestead interest in the sum of $2,000 be paid to the clerk of the court, to be by him, under the direction of the court, invested in some safe interest-bearing securities, and the income therefrom equally divided between Bernice and defendant during the lifetime of defendant, and at his death the full sum to be paid to Bernice; that the residue of the proceeds of the sale be divided, one-fourth to defendant and three-fourths to plaintiff as guardian of Bernice. From this judgment defendant has appealed.

As stated by counsel for plaintiff in their brief, but two questions are involved in this case: "First. Did a homestead right exist in favor of defendant at the time of the death of Mrs. Goff? Second. If such homestead right did exist, is Mrs. Goff's child entitled to any part of the income therefrom?" We shall not spend any time considering the first point. The evidence is uncontradicted that at the time of the death of Mrs. Goff she and the defendant were husband and wife and were occupying the land as their homestead. This being a fact, then the further fact that a homestead right exists in favor of defendant is too well settled in this state to require discussion. The nature and extent of that homestead right is involved in the second point.

Section 17, ch. 36, Comp. St. 1911, provides: "If the homestead was selected from the separate property of either husband or wife, it vests, on the death of the person from whose property it was selected, in the survivor for life, and afterwards in his or her heirs forever, subject to the power of the decedent to dispose of the same, except the life estate of the survivor, by will." The contention of plaintiff is that the homestead does not descend to the surviving spouse, individually, for life, but that it descends to the survivor and family; and *Guthman v. Guthman,*

18 Neb. 98, 106, is relied upon to sustain this contention.
After considering the case, and at the close of the opinion,
it is said: "It may not be out of place in this connection
to say, for the guidance of the lower courts, that the home-
stead set apart and assigned to the petitioner in this pro-
ceeding must be held by her as well for the benefit of the
respondent, Minnie Ellen Guthman, during her minority,
as for herself, as a home, and while the same is rented out
during said minority the said Minnie Ellen will be entitled
to share equally with the petitioner in the net rental prof-
its thereof." This language would seem to support plain-
tiff's view; but an examination of the case shows very
clearly that the language used is entirely outside of the
question litigated and decided. In that case the plaintiff
filed her petition in the county court asking that her home-
stead be set off to her, and that her dower in the residue
of the decedent's lands be admeasured and assigned. The
county court sustained her contention, over the objection
of the heirs, set off to her a quarter section of land as her
homestead, and held that she was entitled to dower in the
remaining lands of the decedent. On appeal to the district
court it was there held that the county court was without
jurisdiction to set apart the homestead to the petitioner,
and that, the case being one on appeal, the district court
was in like manner without jurisdiction. The judgment
of the county court was therefore reversed as to the as-
signment of the homestead, and affirmed on the question
of dower. On appeal to this court this judgment was en-
tered: "The judgment of the district court in so far as it
affirms the judgment of the county court is affirmed, and
in so far as it reverses the judgment of the county court
is reversed, and the judgment of the county court is in
all things affirmed." This statement of the issues that
were tried and determined both in the district court and in
this court shows that the language quoted from the opin-
ion was dictum pure and simple. The section of the stat-
ute under consideration has been so frequently construed
by this court contrary to the dictum in *Guthman v. Guth-*

*man, supra,* that we will refer to enough of the cases to set that question at rest.

In *Durland v. Seiler,* 27 Neb. 33, our then and present chief justice, in construing this statute, said: "During the life of the owner of the fee the exempt character of the property was made to depend upon its occupation as a homestead. But upon his or her death a new title is created which vests in the survivor for life unconditionally."

In *Nebraska Loan & Trust Co. v. Smassall,* 38 Neb. 516, it is held that under this statute, "if the homestead was selected from the separate property of either husband or wife, it vests on the death of the person from whose property it was selected in the survivor for life, and afterwards in his or her heirs forever, etc. This life estate the survivor may mortgage, and the purchaser under the decree of foreclosure will acquire the life estate." The opinion in that case was by Mr. Chief Justice Maxwell.

In *Brichacek v. Brichacek,* 75 Neb. 417, it is held that under this statute "a homestead which was the separate property of the wife, at her death, vests in her surviving husband for life, and the wife has no power to limit or dispose of the life estate of the survivor by will."

In *In re Estate of Fletcher,* 83 Neb. 156, we held: "A widow need not account to the estate of her husband for the rents and profits of their homestead which have accrued subsequent to his death." The opinion was by Root, J. On page 159 it is said: "It is claimed that the widow should account for rent received by her for the use of a house and two lots in the city of Crete. The court found that said property was the homestead of the deceased, and that finding is sustained by the evidence. The widow, upon her husband's death, became seized of a life estate in said homestead, and she need not account for the use thereof or the rents accruing subsequent to her husband's death."

In *In re Estate of Robertson,* 86 Neb. 490, it is held: "Where a woman, while living with her husband and children upon certain real estate as the family homestead, became insane, and remained in that condition until after

her husband's death, her husband had no power to divest her of her interest in the homestead, by will." The opinion was by Letton, J. It shows that, while Robertson and his wife were living together and occupying the property in controversy as their homestead, Mrs. Robertson became insane and was committed to an asylum. It is apparent from a reading of the opinion that her insanity was incurable. After she was confined in the asylum Robertson lived on the premises with another woman, and by her had three children. He died testate. In his will he devised a certain lot in Lincoln to his wife, and three-fourths (and in a certain contingency all) of his real estate to those three children, all of whom were minors. A guardian *ad litem* for the widow was appointed by the county court. As such guardian *ad litem* he filed an application praying that he might be permitted to elect on behalf of the widow whether to receive the provision of the will or to have assigned to her dower interest in the real estate and the provisions made for her by statute. He was permitted to do so, and elected to renounce the provisions of the will. He also prayed that the court assign to the widow her life estate in the homestead and for the assignment of dower. Appraisers were appointed, who valued the residence property at less than $2,000, and set the same apart as a homestead. The executor appeared and objected to the report, setting out that the homestead was worth more than $2,000, was not occupied as a homestead by the widow at the time of testator's death, and that it left nothing for the minor heirs as contemplated by the will. The county court found for the petitioner, and confirmed the proceedings; ordered that the widow have possession of the homestead during her natural life, and that the three minor heirs of Robertson share with her in the rents, issues and profits of the homestead during their minority. It also adjudged that the minors should receive the sum of $10 a month from the rents, issues and profits of the homestead for their maintenance until further order. An appeal was taken from these orders to the district court, where upon the same issues the objections

of the executor were overruled; the order of the county court confirming the report of appraisers and setting apart the homestead to the widow was affirmed; the order giving to the minor heirs a share in the rents, issues and profits of the homestead was reversed; and it was ordered that the guardian *ad litem* have possession of the property as the homestead of the widow. From this judgment the executor appealed to this court. We affirmed the judgment of the district court in all respects, except as to the order that the guardian *ad litem* have possession of the property as the homestead of the widow, for the reason that the guardian *ad litem* is a special guardian, appointed solely for the purpose of carrying on litigation and preserving the interests of his ward in matters pending before the courts; that he had no right to the possession of the real property of his ward or to the rents and profits therefrom; that he gives no bond, and has only special duties; that, for the purpose of taking care of the estate, a general guardian should be appointed. The cause was remanded, with directions to modify the judgment upon that point only. In the opinion, on page 493, it is said: "In the case at bar, upon Robertson's death the homestead, not exceeding two lots in extent or $2,000 in value, vested at once 'in the survivor for life, and afterwards in his or her heirs forever, subject to the power of the decedent to dispose of the same, except the life estate of the survivor, by will' (citing the statute and several former decisions). He could not take this right away from her by will without her consent. *National Bank of Commerce v. Chamberlain,* 72 Neb. 469. Her insanity could make no difference. *Weatherington v. Smith,* 77 Neb. 363. The minor heirs, either as devisees in the will or as legitimatized children, were not entitled to participate with the widow in the possession of, or in the rents and profits arising from, the homestead. They were not members of her family, and had no possessory interest in the property until her death. The executor has shown no title to or right or interest in the premises, and the widow alone is entitled to possession of the same during her natural life."

We might well stop here, but before doing so we call attention to *Hobson v. Huxtable,* on rehearing, 79 Neb. 340. In the syllabus the rule is again announced that, "if a homestead be selected from the separate property of a married woman in her lifetime, upon her death intestate, a life estate vests in the surviving spouse, and remainder in the heirs of the deceased." In the opinion by Judge Root (then commissioner), on page 342, it is said: "The title in the succession of a homestead is not evidenced by written grant, but arises from seisin, the family relation and residence; and those facts take the place of the written instrument that usually evidences the prior estate and the one in remainder. The nature of the estate devolving upon the heirs at the death of the fee-holding spouse is settled as squarely as the decision of this court can establish any principle of law, and is not open to question." That estate is a vested estate in remainder, with right of possession upon, and not until, the death of the owner of the life estate, the surviving spouse. The estate thus vested in the surviving spouse is a new and independent estate, not dependent upon the general law in relation to homesteads. During the lifetime of both husband and wife, occupancy is an essential element in the right of homestead. True, there may be a temporary absence from even such a homestead, but a permanent cessation of occupancy as a homestead would destroy its homestead character. Not so with the homestead right which vests in a surviving husband or wife. By the operation of the statute under consideration that homestead right is fixed, absolutely, not during subsequent occupancy merely, but during the life of the surviving spouse.

In *Cooley v. Jansen,* 54 Neb. 33, we held that the land of which a man dies seised, which he has not devised, and which during his life and at the time of his death was the homestead of himself and family, "vests in the widow for life, and remainder in the heirs,    *    *    *    and this is true whether she, after the death of the husband, occupies the property as a homestead or not."

A careful examination of all of the later cases in this court shows that the dictum in *Guthman v. Guthman, supra,* has never been adopted as a proper construction of the statute, and such dictum is now expressly disaffirmed. Under these decisions a surviving spouse takes a vested life estate in the homestead as such surviving spouse for his or her benefit, to the exclusion of the whole world. This is the plain reading of the statute, and, as stated in *First Nat. Bank v. Reece,* 64 Neb. 292, 297, "the right thus vested in the survivor is not made to depend upon whether any issue resulted from the marriage, but is given regardless of whether there are children to be provided for by the survivor." It follows that the district court erred in depriving the defendant of any portion of his homestead interest in the property in controversy or in attempting to place the same beyond his control.

Under our holding in *Meisner v. Hill,* 92 Neb. 435, this right of homestead in the defendant, as against the heirs of the decedent, was not subject to the $2,000 limitation. Hence, Bernice was not entitled, as an heir, to any portion of the homestead until the death of the defendant. The interests of the respective parties in the land were such that defendant could not have been compelled to submit to a sale of the 80 acres of land, which constituted his homestead, by partition or otherwise. He had a right to hold it during his natural life and to enjoy the use of it or the rents and profits arising therefrom. On the other hand, he could not have compelled the owner of the remainder estate to submit to a sale by partition or otherwise. A remainderman may say to the owner of the life estate: "You have a right to sell your life estate. Over that I have no control. But you cannot sell the entire estate. That is to say, you cannot sell my interest as a remainderman, even though you turn over to me a portion of the proceeds arising from such sale. I prefer to wait until your death and then take the entire estate." If, therefore, either of the parties to this suit had stood upon his or her legal rights, the district court would have had no alternative but to dismiss plaintiff's petition and defendant's

cross-petition. But the parties have seen fit to waive their rights in this respect. It is well settled that a homestead right is a purely personal one, which the owner may at any time waive or renounce. In like manner a remainderman may sell his remainder estate. *Schuyler v. Hanna,* 31 Neb. 307. In this case defendant has fixed the extent of homestead which he chooses to assert, and asks that the balance be distributed among the heirs of the decedent. He has thereby waived his right to assert any greater homestead interest in the estate. The plaintiff has asked that, if her contention that defendant has no homestead interest in the property be decided adversely to her, and the property sold, the proceeds may be distributed among the heirs. The district court held adversely to her on her contention above noted, and ordered the property sold under the ordinary proceedings in partition. It was sold. The money was brought into court for distribution. An order was entered requiring the parties to appear by a certain hour and show cause why the sale should not be confirmed. Neither of the parties interposed any objection, and the sale was duly confirmed, and a deed ordered to the purchaser. Under these circumstances the court is justified in holding the parties to a result which they have jointly produced, and in distributing the proceeds of the sale according to law. In making that distribution, we start out with $2,000 as the value of defendant's homestead interest in the land; that is to say, the value of his life estate. He is not entitled, however, to have this full sum paid to him, as that would be to divest the owner of the remainder of all interest in that portion of her mother's estate represented by this valuation of the life estate. Defendant having consented that the land be sold and the proceeds from its sale divided, the court should ascertain the present cash value of his life estate of $2,000, based upon his age and expectancy of life, and order paid to him such present cash value. The remainder of the proceeds arising from the sale should be divided between the defendant and the plaintiff in the proportion of one-fourth to the defendant and three-fourths to the plaintiff, as guardian.

The judgment of the district court is reversed, with directions to ascertain the present cash value of defendant's life estate of $2,000, and distribute the proceeds of the sale as above indicated.

REVERSED.

ROSE and HAMER, JJ., dissent.