934 So.2d 548 (2006)
Henry DeMAYO, Appellant,
v.
Deborah CHAMES and Heller & Chames, P.A., Appellees.
No. 3D04-117.
District Court of Appeal of Florida, Third District.
June 14, 2006.
*549 Sophie DeMayo, for appellant.
Heller and Chames, P.A., and Deborah S. Chames and Jonathan A. Heller, Miami, for appellees.
Before GREEN, WELLS, and SHEPHERD, JJ.

ON MOTIONS FOR REHEARING, AND CERTIFICATION
WELLS, J.
We grant the Appellees' Motion for Rehearing/Clarification. We withdraw the opinion issued on March 15, 2006, and substitute the following opinion in its place.
Henry DeMayo appeals from a final judgment granting Deborah Chames and her law firm, Heller & Chames, P.A., attorneys' fees pursuant to a charging lien. The question presented is whether DeMayo effectively waived his constitutional right to homestead exemption under Article X, section 4 of the Florida Constitution. We hold he did not.
In December 2002, DeMayo retained Chames and her law firm, Heller and Chames, P.A., to represent him in post-dissolution proceedings to modify child support and alimony. The retainer agreement executed by DeMayo, as pertinent here, stated:
It is specifically agreed that Heller & Chames, P.A. shall have and is hereby granted all general, possessory and retaining liens and all equitable, special and attorney's charging liens upon the client's interests in any and all real and personal property within the jurisdiction of the court for any balance due, owing and unpaid as well as a lien in any recovery whether by settlement or trial; and such lien or liens shall be superior to any other lien subsequent to the date hereof and that the client hereby knowingly, voluntarily and intelligently waives his rights to assert his homestead exemption in the event a charging lien is obtained to secure the balance of attorney's fees and costs.
In October 2003, the trial court granted Heller and Chames' request to withdraw as DeMayo's counsel and, expressly enforcing the homestead waiver provision of the retainer agreement, entered judgment for $33,207.76 in the law firm's favor. We reverse.
Article X, section 4 presently provides:
Homestead; exemptions. 
(a) There shall be exempt from forced sale under process of any court, and no judgment, decree or execution shall be a lien thereon, except for the payment of taxes and assessments thereon, obligations contracted for the purchase, improvement or repair thereof, or obligations contracted for house, field or other labor performed on the realty, the following property owned by a natural person....
*550 The exemption accorded by this provision has been part of the Florida Constitution for over a hundred years. In 1884, the Florida Supreme Court in Carter's Administrators v. Carter, 20 Fla. 558, 570 (1884), set forth the policy considerations underlying this provision:
True, a man may sell his personal property, or may pledge or mortgage it, but in that case the property sold or pledged is designated and identified and a special interest is created in favor of a creditor in the particular article pledged or mortgaged, and in no State is this power of the owner of personalty denied. The object of exemption laws is to protect people of limited means and their families in the enjoyment of so much property as may be necessary to prevent absolute pauperism and want, and against the consequence of ill advised promises which their lack of judgment and discretion may have led them to make, or which they may have been induced to enter into by the persuasions of others.
In this country especially where there happen to be many illiterate and unsophisticated people it would be mischievous to encourage such agreement in which by the mere scratch of a pen the whole policy of the exemption laws would become nugatory. Such people, without reference to "race, color or previous condition," are and ought everywhere to be the wards of the State and to be protected accordingly.
When a man executes a mortgage or bill of sale upon certain specified property, the very nature of the transaction implies the exercise of discretion and the contemplation of inevitable consequences. Such contracts are, therefore, upheld as well in respect to real as to personal property. We have in several cases held that a sale under a mortgage is not a forced sale because it was a sale under consent given under seal and irrevocably conveying an interest in the thing described. Such contracts are regulated by law and are specifically enforced in courts of equity. And by such transactions men may, through misfortune, become impoverished and their families brought to want. This is an incident of all human transactions, even where the utmost caution and circumspection are exercised, but this is not an argument in favor of encouraging indiscreet contracts made with a view to an evasion of the settled policy of the State. Few men would mortgage their household goods and their children's clothes to a hard creditor with the inevitable result brought vividly to their understanding, but many thoughtless and improvident people might be induced to obtain credit by merely "waiving the benefit of exemption," and thus placing the last blanket and bed and their own and the children's clothing at the mercy of a hard creditor, if an agreement like this should be sustained.
In view of the recognized policy of the States in enacting exemption laws and of the practically universal concurrence of the authorities on the identical question, our conclusion is that the "waiver" of the benefit and protection of the exemption laws contained in this note is not valid to defeat a claim of exemption.
In 1956, the Florida Supreme Court addressed whether the protections of Article X, section 4 could be waived in a written instrument, a promissory note, which did not involve the exceptions delineated in the constitution. The Court held that the protections could not be waived because:
[T]his Court long ago determined that such a waiver was not an alienation of the homestead and not enforceable, and secondly, that such a waiver was contrary to the policy of the exemption laws of this State. Carter's Adm'r v. Carter, 20 Fla. 558. "The public policy of a *551 state or nation must be determined by its Constitution, laws, and judicial decisions * * *." Atlantic Coast Line R. Co. v. Beazley, 54 Fla. 311, 45 So. 761, 786. No policy of this State is more strongly expressed in the constitution, laws and decisions of this State than the policy of our exemption laws.
Sherbill v. Miller Mfg. Co., 89 So.2d 28, 31 (Fla.1956). Carter and Sherbill confirm that Article X, section 4 "protects the homestead against every type of claim and judgment except those specifically mentioned in the constitutional provision itself" and that other than for the purposes stated in this provision, cannot be waived. See Havoco of America, Ltd. v. Hill, 790 So.2d 1018, 1021 (Fla.2001) (quoting Olesky v. Nicholas, 82 So.2d 510, 513 (Fla.1955)); Butterworth v. Caggiano, 605 So.2d 56, 60 (Fla.1992); In re Estate of Nicole Santos, 648 So.2d 277, 282 (Fla. 4th DCA 1995) (observing that "[p]rotection of homestead from alienation cannot be waived by contract or otherwise"); see also In re Clements, 194 B.R. 923, 925 (M.D.Fla.1996) (confirming that under the expressio unius est exclusio alterius rule, homestead, in Florida, may not be used to satisfy debts other than those expressly permitted by article X, section 4). Because the attempted waiver in this case is unrelated to those purposes stated in Article X, section 4, it is invalid.
Accordingly, we reverse the order under review insofar as it grants a charging lien on the real property of Henry DeMayo in this case. We affirm the order on appeal in all other respects.

CONCURRENCE AND CERTIFICATION
SHEPHERD, J., with whom GREEN, J., joins concurring in result and certifying question of great public importance.
Because the case before us is factually indistinguishable from the Florida Supreme Court's opinion in Sherbill v. Miller Mfg. Co., 89 So.2d 28 (Fla.1956), we are compelled to join the affirmance of the decision below. However, we feel that we would be remiss if we did not note that Sherbill, and the much earlier decision on which it is grounded, Carter's Adm'rs v. Carter, 20 Fla. 558 (1884), are inconsistent with the modern view that a person's right to exempt his homestead property from the claims of a creditor is a personal right that may be waived by that person if he or she so desires. For this reason, and because the people of this state in 1984 made a fundamental change in the text of their homestead provision that is, at a minimum, inharmonious with the policy pronouncement on which Carter's Adm'rs and hence Sherbill are moored, and also because there is strong evidence that our High Court is tending toward the modern view in its consideration of other provisions of the Florida Constitution involving personal economic decision-making, see In Re: Amendment to the Rules Regulating the Florida Bar v. Rule 4-1.5(f)(4)(b) of the Rules of Professional Conduct, Case No. SC05-1150 (Docket Entry dated December 14, 2005, ordering the Florida Bar to submit a proposed rule allowing clients to waive the constitutional limit on the amount of attorney fees that contingent fee counsel can receive in medical malpractice matters), we certify the question of whether the policy pronouncement found in Carter's Adm'rs should be overruled.
Although the Florida Constitution has long exempted homestead property from a "forced sale," it is important at the outset to recognize that Mr. DeMayo is not facing a "forced sale" of his property. Rather, he resists honoring an agreement he made with his counsel whereby he "knowingly, voluntarily and intelligently" waived his constitutional right. Thus, he has no textual *552 support for the position he argues before this court. See Butterworth v. Caggiano, 605 So.2d at 58, 59 (Fla.1992) ("The presumption is in favor of the natural and popular meaning in which the words are usually understood by the people who adopted them.").
For this reason, Mr. DeMayo necessarily must place his primary reliance upon the policy pronouncement that derives from Carter's Adm'rs that a waiver of the type signed by him is "contrary ... to the policy of this State." See Sherbill, 89 So.2d at 31. The pronouncement of Carter's Adm'rs is in turn bottomed on a distillation by the High Court of the day of authorities from other jurisdictions from which it concluded that prohibition represented "the recognized policy of the States." Carter's Adm'rs, 20 Fla. at 570-71. Respectfully, we must point out that today the vast majority of states now permit waivers, some by legislative enactment and others as matter of judicial interpretation of their respective constitutional and statutory provisions. See Tenn. Code. Ann. § 26-2-301(b)(2006) (permitting waiver of homestead "when the exemption has been waived by written contract"); Wash. Rev. Code § 6.13.080(2)(a)(2006); Ferguson v. Ferguson, 111 S.W.3d 589, 598 (Tex.App.2003); Red River State Bank v. Reierson, 533 N.W.2d 683 (N.D.1995) (approving waiver of shield of homestead exemption relating to non-purchase money second mortgages); Sunwest Bank of Clovis, N.A. v. Garrett, 113 N.M. 112, 823 P.2d 912 (1992); Rogers v. Great American Federal Sav. & Loan Ass'n, 304 Ark. 143, 801 S.W.2d 36, 38 (1990) ("This court has recognized waivers or releases of home-stead rights for many years."); Hawkeye Bank & Trust Co. v. Michel, 373 N.W.2d 127 (Iowa 1985); Knight v. Parish Nat. Bank, 457 So.2d 1219 (La.App. 1st Cir.1984); Matter of Wallace's Estate, 1982 OK 80, 648 P.2d 828, 832 (1982) ("The constitutional homestead exemption is a personal right which may be waived or abandoned."); State v. Smith, 129 Ariz. 28, 628 P.2d 65, 67 (1981) ("From a review of the Arizona statutes governing homestead exemptions, it is abundantly clear that the exemption may be voluntarily waived."); Argonaut Ins. Co. v. Cooper, 261 N.W.2d 743, 744 (Minn.1978) ("[T]he owner of a homestead may waive his homestead rights, even though they be constitutional rights, by an act which evidences an unequivocal intention to do so."); Schutterle v. Schutterle, 260 N.W.2d 341, 354 (S.D. 1977) ("Although some courts have held such waivers to be invalid, we believe that the better rule is that homestead rights may be waived just as any other rights.")(internal citations omitted); I.H. Kent Co. v. Miller, 77 Nev. 471, 366 P.2d 520, 522 (1962) ("The exercise and preservation of the homestead exemption is held to be a purely personal right which can be exercised or waived by the debtor."); In re Moore's Estate, 210 Or. 23, 307 P.2d 483, 492 (1957) ("[T]he homestead exemption, during the lifetime of the owner, is not an estate but is a personal privilege which must be claimed to be effective, and hence it is subject to waiver."); In re Dalton's Estate, 109 Utah 503, 167 P.2d 690 (Utah 1946); Cameron v. McDonald, 216 N.C. 712, 6 S.E.2d 497, 499 (1940); Home Owners Loan Corp. v. Reese, 170 Va. 275, 196 S.E. 625, 626 (1938); Shearon v. Goff, 95 Neb. 417, 145 N.W. 855, 858 (1914) ("It is well settled that a homestead right is a purely personal one, which the owner may at any time waive or renounce."); Prather v. Smith, 101 Ga. 283, 28 S.E. 857 (1897); Weaver v. Weaver, 109 Ill. 225 (Ill.1883) (limiting the public policy bar to waiver of homestead exemptions to "the actual facts in the case[] in which [it was] made"); Case v. Dunmore, 23 Pa. 93 (Pa.1854); see also McMillan v. Aru, 773 So.2d 355 *553 (Miss.App.2000); Schuler v. Wallace, 61 Haw. 590, 607 P.2d 411 (Haw.1980) (permitting waiver by failure to raise the issue at trial); Kennett v. McKay, 336 Mich. 28, 57 N.W.2d 316 (1953) (permitting waiver of homestead rights in antenuptial setting); Tibbetts v. Tibbetts, 113 Me. 201, 205, 93 A. 178 (Me.1915). Of these twenty-four jurisdictions which have concluded that the right to exempt one's homestead property is a personal right that may be waived, twenty of them post-date Carter's Adm'rs, sixteen post-date Sherbill, and four of the six jurisdictions on which the Carter's Adm'rs' court rested its decision have subsequently either expressly reversed the decision of that jurisdiction on which the Carter's Adm'rs' court relied, ignored the decision, or significantly limited its scope. See Hawkeye Bank, 373 N.W.2d 127 (Iowa 1985) (recognizing waiver pursuant to a state statute designed to permit it); Knight, 457 So.2d 1219 (La.App. 1st Cir. 1984) (accord); Cameron, 6 S.E.2d at 499 (N.C.1940); Weaver, 109 Ill. 225 (Ill.1883) (ruling that decisions such as Phelps v. Phelps, 72 Ill. 545 (Ill.1874) "are to be limited by the actual facts in the cases in which they were made.").
While we agree that adhering to precedent is usually the wise policy, see Payne v. Tennessee, 501 U.S. 808, 827, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991) ("Adhering to precedent `is usually the wise policy, because in most matters it is more important that the applicable rule of law be settled than it be settled right.'")(citing Burnet v. Coronado Oil & Gas Co., 285 U.S. 393, 406, 52 S.Ct. 443, 76 L.Ed. 815 (1932) (Brandeis, J., dissenting)), nevertheless our Supreme Court has continually reaffirmed that "[a]lthough stare decisis is fundamentally important in our system of justice, it is not an ironclad and unwavering rule so that we must bend to the voice of the past, however outmoded or meaningless that voice may have become." Weiand v. State, 732 So.2d 1044, 1055 n. 12 (Fla.1999) (internal quotations omitted). We submit that the re-consideration by the Florida Supreme Court of Carter's Adm'rs is particularly appropriate here where we as members of the judiciary have no particular expertise in making the policy judgment in question. Cf. Hoffman v. Jones, 280 So.2d 431, 434 (Fla.1973) (adopting the doctrine of comparative negligence in place of the doctrine of contributory negligence because "we definitely consider the problem to be a judicial one"). We profoundly question in a time of near instant communication, and a state legislature that in its annual sessions[1] routinely enacts legislation to protect its citizens from all manner of overreaching,[2] it remains necessary and legally appropriateif ever it wasfor the Florida Supreme Court to treat Florida's citizens as "wards of the state" with respect to homestead. See Carter's Adm'rs at 570.[3]
*554 That our concern is well-taken is supported by the fact that one hundred years after the pronouncement in Carter's Adm'rs, the people of the State of Florida, in a general election held in November 1984, amended their constitution to dramatically expand the class of persons who could take advantage of Florida's homestead law by substituting the qualifying phrase "a natural person" for the "head of a family" qualifier[4] that had existed in every version of the constitutional provision from its first adoption in 1868. Compare Art. X, § 4, Fla. Const. (1984) with Art. IX, § 1, Fla. Const. (1868); and Art. X, § 1, Fla. Const. (1885) and Art. X, § 4 (1968). Since that time, any resident of the state, whether single, divorced, or widowed, has had the legal capacity to assert the shield of the exemption of homestead property from a forced sale without regard to familial standing or other status or station in life. Thereafter, the decisions from our High Court reflect, sometimes to the Court's personal discomfort, that the benefit of the shield of Article X, section 4 against forced sales of one's homestead property has been transmogrified from one that exists solely for the protection of the family home to an entitlement available to all comers.[5]See Havoco at 1019 (affording the protection of the constitutional shield to a debtor who acquired homestead using non-exempt funds with the specific intent of hindering, delaying and defrauding creditors in violation of section 222.29, 222.30, or 726.105 of the Florida Statutes, noting that it was "powerless to depart from the plain language of Article X, section 4"); Caggiano at 56 (affording the protection of the constitutional shield to a convicted racketeer, a single person who was without any familial or support responsibilities); Tramel v. Stewart, 697 So.2d 821 (Fla.1997) (referring the issue of misuse of Article X, section 4 to the Constitutional Revision Commission on near identical *555 facts). The people of this state in 1984 expanded the breadth of the availability of the shield of homestead to all persons who hold an interest in homestead property "[without regard to] criminal or immoral conduct," Havoco, 790 So.2d at 1022, as now recognized by our Supreme Court; it therefore seems most reasonable to us to pause to inquire whether the judicial branch should continue to make itself available through Carter's Adm'rs to those like Mr. DeMayo, and others of potentially lesser repute in the future, who wish to use Article X, section 4 as a sword, especially when the homestead provision as it appeared before the Carter's Adm'rs court is no longer "construed [solely] in the interest of the family home." See Havoco at 1020. If we were writing on a blank slate, we would not adhere to the reasoning of Carter's Adm'rs.
Lastly, we would suggest that the adoption of the majority view recognizing a person's right to exempt his homestead property from the claims of a creditor as a personal right that may be waived would eliminate any potential for conflict between the decision and reasoning of Carter's Adm'rs and other express provisions of the Florida Constitution. See Art. I, § 2, Fla. Const.; Art. I, § 9, Fla. Const.; Art. I, § 10, Fla. Const.; Art. X, § 6, Fla. Const.; Martino v. Wal-Mart Stores, Inc., 908 So.2d 342, 348 (Fla.2005) (Wells, J., concurring)("Both [the United States and Florida] constitutions expressly protect the freedom to use property . . . ."); Chiles v. United Faculty of Florida, 615 So.2d 671, 673 (Fla.1993) ("[The right to contract] is expressly guaranteed by article I, section 10 of the Florida Constitution."); Palm Beach Mobile Homes, Inc. v. Strong, 300 So.2d 881, 884 (Fla.1974) ("The right to contract and to use one's property as one wills are fundamental rights guaranteed by the constitution of the United States and the constitution of the State of Florida."); Zingale v. Powell, 885 So.2d 277, 283 (Fla. 2004) ("[I]n construing multiple constitutional provisions addressing a similar subject, the provisions `must be read in pari materia to ensure a consistent and logical meaning that gives effect to each provision.'") (internal citation omitted). Unless there is a compelling legal reason to the contrary, we are of the belief that the citizens of this state should be permitted to order their world as they see fit.
For the foregoing reasons, we certify the following question to the Florida Supreme Court as a matter of great public importance:
WHETHER, IN LIGHT OF SUBSEQUENT PRECEDENT IN FLORIDA AND OTHER JURISDICTIONS, AND THE TEXTUAL CHANGES MADE BY THE PEOPLE OF THE STATE OF FLORIDA IN ARTICLE X, SECTION 4 OF THE FLORIDA CONSTITUTION IN THE GENERAL ELECTION OF NOVEMBER 1984, THE HOLDING IN CARTER'S ADM'RS v. CARTER, 20 Fla. 558 (1884), FOLLOWED IN SHERBILL v. MILLER MFG. CO., 89 So.2d 28 (Fla. 1956), THAT A WAIVER OF THE BENEFIT AND PROTECTION OF THE EXEMPTION FOUND IN ARTICLE X, SECTION 4(A) OF THE FLORIDA CONSTITUTION IS UNENFORCEABLE AGAINST THE CLAIM OF A GENERAL CREDITOR, SHOULD BE OVERRULED?
NOTES
[1] In 1884, the state legislature met biennially. Art. IV, § 2, Fla. Const. (1884). The population of the state according to the most recent census taken in 1880 was less than 300,000. Florida Census: 1880, http://fcit.coedu.usf.edu/florida/docs/c/census/1880.htm (last visited March 7, 2006).
[2] See, e.g., § 501.202(2), Fla. Stat. (1973)(establishing the Florida Deceptive and Unfair Trade Practices Act); § 681.101, Fla. Stat. (1981)(establishing Florida's automobile Lemon Law); Wickman v. Firestone, 500 So.2d 740, 741-42 (Fla. 4th DCA 1987) (noting that § 496, Fla. Stat. (1985) was "designed to protect a charitably minded public from being improperly solicited, abused and even defrauded."); Gabriel v. Tripp, 576 So.2d 404 (Fla. 2d DCA 1991) (holding that § 384.34, Fla. Stat. (1989), which punishes the knowing transmission of a sexually transmissible disease, "was designed to protect a particular class of persons from their inability to protect themselves").
[3] To the extent that the opinion of the court suggests that recent authority somehow either supports or "confirm[s]" the reasoning of either Carter's Adm'rs or Sherbill, see pp. 551-52, supra, we respectfully disagree. While the doctrine of stare decisis requires our concurrence in the result, we are compelled to reiterate that no modern authority in this state "confirm[s]" either of those decisions. The Olesky case, upon which we glean the opinion of the court places substantial reliance, involved two involuntary divestituresi.e. two judgments held by general creditors where waivers were not at issue. The facts of the case at bar are to the contrary. See p. 549, supra. Indeed, recent Supreme Court authoritiesHavoco, 790 So.2d at 1022 and Caggiano, 605 So.2d at 59expressly describe the homestead exemption as "intended simply to guarantee that the homestead would be preserved against any involuntary divestiture by the courts ...." Caggiano, 605 So.2d at 59 (emphasis added).
[4] Whether a person qualified as the "head of a family" was a question of fact to be determined by two factors: "(1) a legal duty to maintain arising out of a family relationship; (2) a continuing communal living by at least two individuals under such circumstances that one is regarded as the person in charge." In re Estate of Van Meter, 214 So.2d 639, 641 (Fla. 2d DCA 1968), approved 231 So.2d 524 (Fla.1970); Flannery v. Green, 482 So.2d 400, 402 (Fla. 2d DCA 1985) citing Holden v. Estate of Gardner, 420 So.2d 1082 (Fla.1982).
[5] In this respect, the availability of the exemption afforded by Article X, section 4 after January 1, 1985, the effective date of the November 1984 amendment, is no different than many other entitlements that most homeowners can claim, which range broadly from federal mortgage interest and property tax deductibility to other state entitlements such as the $25,000 exemption of homestead property from ad valorem taxation, the limitations on annual increases in assessed valuations of homestead property, reductions in assessed value for construction of quarters for parents and grandparents, and an additional exemption for individuals over age 65 with limited means. See Art. VII, §§ 4, 6, Fla. Const. The legislature and the people of this state know how to protect and, indeed, advantage homestead.