790 So.2d 1018 (2001)
HAVOCO OF AMERICA, LTD., Appellant,
v.
Elmer C. HILL, Appellee.
No. SC99-98.
Supreme Court of Florida.
June 21, 2001.
*1019 J. Nixon Daniel, III and John P. Daniel of Beggs & Lane, Pensacola, FL, for Appellant.
John E. Venn, Jr., and Louis K. Rosenbloum, Pensacola, FL, for Appellee.
Virginia B. Townes and Jules S. Cohen of Akerman, Senterfitt & Eidson, P.A., Orlando, FL, for Florida Bankers Association, Florida Retail Federation, NACM of Florida, Inc. and NACM Florida Gulf Coast Unit, Inc., Amici Curiae.
SHAW, J.
We have for review the following question of Florida law certified by the United States Court of Appeals for the Eleventh Circuit that is determinative of a cause pending in the federal courts and for which there appears to be no controlling precedent:
Does Article X, Section 4 of the Florida Constitution exempt a Florida homestead, where the debtor acquired the homestead using non-exempt funds with the specific intent of hindering, delaying, or defrauding creditors in violation of Fla. Stat. § 726.105 or Fla. Stat. §§ 222.29 and 222.30?
Havoco of America, Ltd. v. Hill, 197 F.3d 1135, 1144 (11th Cir.1999). We have jurisdiction. Art. V, § 3(b)(6), Fla. Const. For the reasons that follow we answer the certified question in the affirmative.

FACTS
On July 22, 1992, Elmer Hill filed a voluntary Chapter 7 bankruptcy petition in which he claimed that real property located in Destin, Florida, (Destin Property) was exempt as his homestead under article X, section 4 of the Florida Constitution.[1] Havoco objected, arguing that Hill converted nonexempt assets into the homestead with the intent to hinder, delay, or defraud his creditors. The dealings between the parties which precipitated the instant action, as stated by the Eleventh Circuit in its opinion, are as follows:
In 1981, Havoco filed suit against Hill claiming damages for fraud, conspiracy, tortuous [sic] interference with contractual relations, and breach of fiduciary duty. Havoco alleged that Hill conspired to eliminate Havoco as a principal under its ten year contract to supply coal to the Tennessee Valley Authority. After several appeals to the Seventh Circuit, Havoco's case finally came to trial nine years later. The jury found for Havoco on all its claims against Hill and awarded Havoco $15,000,000 in damages. The district court entered judgment in accordance with the jury verdict on December 19, 1990, and the judgment became enforceable on January 2, 1991.
Hill purchased the Destin property on December 30, 1990. Although he was a long-time resident of Tennessee, Hill claims that he intended to make the Destin property his retirement home. He paid approximately $650,000 in cash for the Destin property.
Havoco, 197 F.3d at 1137 (footnote omitted).
The bankruptcy court held an evidentiary hearing in which Havoco attempted to present evidence of other transfers of nonexempt assets by Hill to demonstrate that the purchase of the Destin property was *1020 part of a larger scheme to defraud Hill's creditors via bankruptcy. The bankruptcy court deemed the evidence irrelevant and denied Havoco the opportunity to present the evidence in support of its claim. Thereafter, the bankruptcy court overruled Havoco's objections to Hill's homestead claims, concluding that Havoco had not proven by a preponderance of the evidence that Hill acted with the specific intent to defraud his creditors when he purchased the Destin property.
On appeal, the district court reversed, finding error in the bankruptcy court's supposition that a debtor's specific intent to defraud his creditors could provide a ground to deny the homestead exemption. The district court ordered the bankruptcy court on remand "to determine whether and under what circumstances Florida law prevented debtors in 1990 and 1991 from converting nonexempt property to exempt property." Havoco, 197 F.3d at 1138. Further, the district court ordered the bankruptcy court to conduct an evidentiary hearing during which Havoco would be allowed to present evidence of Hill's other transfers of nonexempt assets if it determined that Hill's homestead claim was limited under Florida law.
On remand, the bankruptcy court, relying upon Bank Leumi Trust Co. v. Lang, 898 F.Supp. 883 (S.D.Fla.1995), and Butterworth v. Caggiano, 605 So.2d 56 (Fla. 1992), held that Florida law did not prohibit Hill from converting nonexempt assets into a homestead, even if done with the intent to place those assets beyond the reach of his creditors. Havoco, 197 F.3d at 1138. The bankruptcy court further concluded that Florida's fraudulent conveyance statute did not "affect the debtor's right to the homestead exemption." Id. The district court affirmed the bankruptcy court's decision.
The Eleventh Circuit, detailing the inconsistent treatment of the issue in the bankruptcy courts stemming from this Court's application of the homestead exemption, certified the instant question to this Court.[2]

THE HOMESTEAD EXEMPTION
Florida's homestead exemption provides, in pertinent part:
There shall be exempt from forced sale under process of any court, and no judgment, decree or execution shall be a lien thereon, except for the payment of taxes and assessments thereon, obligations contracted for the purchase, improvement or repair thereof, or obligations contracted for house, field or other labor performed on the realty, the following property owned by a natural person:
(1) a homestead....
Art. X, § 4(a)(1), Fla. Const. This Court has long emphasized that the homestead exemption is to be liberally construed in the interest of protecting the family home. See, e.g., Milton v. Milton, 63 Fla. 533, 58 So. 718, 719 (1912) ("Organic and statutory provisions relating to homestead exemptions should be liberally construed in the interest of the family home."). However, in the same breath we have similarly cautioned that the exemption is not to be so liberally construed as to make it an instrument of fraud or imposition upon creditors: "[T]he [homestead exemption] should not be so applied as to make it an instrument of fraud or imposition upon creditors." Id. *1021 The petitioner and amici curiae[3] seize upon this latter language to argue that the transfer of nonexempt assets into an exempt homestead with the intent to defraud creditors cannot receive constitutional sanction. While we are certainly loathe to provide constitutional sanction to the conduct alleged by the petitioner and implicated by the certified question, this Court is powerless to depart from the plain language of article X, section 4.[4]

TREATMENT OF THE EXEMPTION
As previously mentioned, this Court's homestead exemption jurisprudence has long been guided by a policy favoring the liberal construction of the exemption: "Organic and statutory provisions relating to homestead exemptions should be liberally construed in the interest of the family home." Milton, 58 So. at 719. A concomitant in harmony with this rule of liberal construction is the rule of strict construction as applied to the exceptions. See, e.g., Quigley v. Kennedy & Ely Ins., Inc., 207 So.2d 431, 432 (Fla.1968).[5] Indeed, this strict construction of the exceptions proved paramount in our most recent inquiries into the homestead exemption in the context of civil and criminal forfeitures.

THE FORFEITURE CASES
In Butterworth v. Caggiano, 605 So.2d 56 (Fla.1992), the State sought civil forfeiture of Caggiano's residence following Caggiano's conviction on one count of racketeering in violation of the Florida Racketeer Influenced and Corrupt Organization Act and fifteen counts of bookmaking. The State sought forfeiture of Caggiano's homestead on the grounds that the property was used by Caggiano in the course of racketeering activity. Id.
This Court, in rejecting the State's attempted distinction between forfeitures and the constitution's reference to "forced sale[s]," held that article X, section 4 prohibited the forfeiture of Caggiano's homestead:
Consequently, in light of the historical prejudice against forfeiture, the constitutional sanctity of the home, and the rules of construction requiring a liberal, nontechnical interpretation of the homestead exemption and a strict construction of the exceptions to that exemption, we hold that article X, section 4 of the Florida Constitution prohibits civil or criminal forfeiture of homestead property.
Id. at 61. While our conclusion was influenced by the legally disfavored status of forfeitures,[6] paramount in our reasoning was the plain language of the homestead provision and the strict construction of the exceptions enumerated therein:

*1022 Most significantly, article X, section 4 expressly provides for three exceptions to the homestead exemption. Forfeiture is not one of them. According to the plain and unambiguous wording of article X, section 4, a homestead is only subject to forced sale for (1) the payment of taxes and assessments thereon; (2) obligations contracted for the purchase, improvement or repair thereof; or (3) obligations contracted for house, field or other labor performed on the realty. Under the rule "expressio unius est exclusio alterious"the expression of one thing is the exclusion of another forfeitures are not excluded from the homestead exemption because they are not mentioned, either expressly or by reasonable implication, in the three exceptions that are expressly stated.
Id. at 60 (first emphasis added). Notably, we rejected the State's attempt to imply an exception for homesteads acquired through criminal or immoral conduct:
The homestead provision of our Constitution sets forth the exceptions and provides the method of waiving the homestead rights attached to the residence. These exceptions are unqualified. They create no personal qualifications touching the moral character of the resident nor do they undertake to exclude the vicious, the criminal, or the immoral from the benefits so provided. The law provides for punishment of persons convicted of illegal acts, but this forfeiture of homestead rights guaranteed by our Constitution is not part of the punishment.
Id. at 60 (alteration in original) (quoting State ex rel. Apt v. Mitchell, 194 Kan. 463, 399 P.2d 556, 558 (1965)). We were again faithful to our strict construction of the exceptions to the exemption five years later in Tramel v. Stewart, 697 So.2d 821 (Fla.1997).
In Tramel, the Stewarts faced forfeiture of their homestead under the Florida Contraband Forfeiture Act after they were arrested for selling marijuana and a search of their home revealed drugs, drug paraphernalia, and a sophisticated marijuana growing operation.[7] The State thus sought forfeiture of the Stewarts' real and personal property, claiming that the property was either being used as an instrumentality of the drug operation or that the property was acquired with funds obtained from the drug activity. Consistent with Caggiano, we held:
As we found in respect to the Florida RICO Act in Caggiano, we find that article X, section 4, does not provide an exception for the forfeiture of homestead property for a violation of the Forfeiture Act. The homestead guarantee uses broad language protecting the homestead from involuntary divestiture by the courts. The constitutional protection of homesteads has not changed since our discussion in Caggiano to include forfeiture as one of the enumerated exceptions. In the absence of such a provision, this court cannot judicially create one.

Tramel, 697 So.2d at 824 (citation omitted) (emphasis added).[8] Indeed, it is on the *1023 strength of our decisions in Caggiano and Tramel that several federal courts have rejected attempts by creditors to enforce claims against homestead property.
In Bank Leumi Trust Co. v. Lang, 898 F.Supp. 883 (S.D.Fla.1995), the Langs, New Jersey residents, owned and operated a New Jersey educational training business for which they secured $1.8 million in financing from Bank Leumi in exchange for corporate promissory notes and personal guarantees. Id. at 884. The Langs' business filed for bankruptcy in 1989 and Bank Leumi filed suit in New Jersey federal district court to collect on the Langs' debt in April of 1990. Id. In May of 1990, the Langs sold their New Jersey home for $940,000, purchasing a home the following month in Palm Beach Gardens, Florida, for $522,000.[9]Id. Bank Leumi obtained a $1.8 million judgment against the Langs in November of 1990 and filed a post-judgment petition seeking to enforce the judgment against the Langs' Palm Beach Gardens home. Id.
In its findings of fact, the district court determined that the Langs converted their nonexempt assets into the exempt homestead for the sole purpose of "hindering and avoiding their creditors and defeating their claims." Id. at 885. Nevertheless, the court concluded, albeit reluctantly, that Florida's homestead exemption did not except property acquired with the intent to hinder and defeat the claims of creditors from its protection:
[T]he homestead exemption does not contain an exception for real property which is acquired in the state of Florida for the sole purpose of defeating the claims of out-of-state creditors. In light of the Supreme Court's admonition in Caggiano that the three exceptions to the homestead exemption should be read narrowly, this Court is unwilling to graft an additional exception.
Id. at 887. Several bankruptcy courts have followed Bank Leumi's lead, reading the exceptions to the exemption strictly consistent with Caggiano and Tramel. See In re Young, 235 B.R. 666 (M.D.Fla. 1999); In re Hendricks, 237 B.R. 821 (M.D.Fla.1999); In re Lazin, 221 B.R. 982 (M.D.Fla.1998); In re Clements, 194 B.R. 923 (M.D.Fla.1996); In re Lane, 190 B.R. 125 (S.D.Fla.1995); In re Popek, 188 B.R. 701 (S.D.Fla.1995).
Nevertheless, the petitioner and amici curiae argue that this Court has not hesitated to reach beyond the literal language of the exemption to allow the imposition of equitable liens against homestead property used as an "instrument of fraud or imposition upon creditors." Milton, 58 So. at 719. Admittedly, we have strayed from the literal language of the exemption where the equities have demanded it; *1024 however, we have done so rarely and always with due regard to the exceptions provided in article X, section 4.

FISHBEIN AND THE EQUITABLE LIEN CASES
In Palm Beach Savings & Loan Ass'n v. Fishbein, 619 So.2d 267 (Fla.1993), this Court allowed an equitable lien against homestead property in favor of a lender, where the debtor husband fraudulently obtained a loan and used the loan to satisfy three preexisting mortgages on the homestead property. Specifically, in March of 1998, Mr. Fishbein borrowed $1.2 million from a Palm Beach bank, securing the debt with a mortgage on the house he owned with his wife. Prior to his marriage, Mr. Fishbein owned the house subject to two mortgages. Following their marriage, Mr. and Mrs. Fishbein received a third mortgage in which they acknowledged the existence of the prior mortgages.
In securing the $1.2 million loan, Mr. Fishbein, while engaged in dissolution proceedings with his wife, forged his wife's signature on the mortgage. Mr. Fishbein used approximately $930,000 of the loan to satisfy the three existing mortgages and taxes on the property. In August of 1998, the Fishbeins entered into a property settlement, in which Mr. Fishbein agreed to buy his wife a $275,000 home and pay her $225,000 in exchange for her relinquishment of any interest in the Palm Beach house. As collateral, Mr. Fishbein gave his wife's attorney a quitclaim deed conveying the Palm Beach house to his wife and himself. Mr. Fishbein represented that the house was clear of all liens except for those claimed by his mother and sister. He failed to comply with the property settlement agreement, and the Palm Beach house went into default. After the bank initiated foreclosure proceedings, Mrs. Fishbein moved back into the house. Mrs. Fishbein was awarded the house nunc pro tunc after the judge in the dissolution proceeding set aside the property settlement agreement for fraud in the procurement.
In the foreclosure proceeding the trial judge allowed an equitable lien on the property to the extent that the loan proceeds were used to satisfy the existing mortgages and property taxes. On appeal, the Fourth District held that the bank was not entitled to an equitable lien because Mrs. Fishbein was not guilty of fraudulent or egregious conduct.
We agreed with the trial court and allowed the bank an equitable lien against Mrs. Fishbein's homestead, accepting the bank's argument that although it could not foreclose on the mortgage under the literal language of the exemption it should be entitled to a lien under the doctrine of equitable subrogation as its loan proceeds were used to satisfy the prior liens against the home. Fishbein, 619 So.2d at 269. Stated differently, we allowed the Palm Beach bank to stand in the shoes of the prior mortgagees who would have been entitled to proceed against the Fishbeins' homestead under the express terms of article X, section 4.
As we emphasized in Fishbein, the imposition of an equitable lien in circumstances suggesting the use of fraud in the acquisition of the homestead was not a remedy of recent vintage: "[W]here equity demands it this Court has not hesitated to permit equitable liens to be imposed on homesteads beyond the literal language of article X, section 4." Fishbein, 619 So.2d at 270.
In Jones v. Carpenter, 90 Fla. 407, 106 So. 127 (1925), this Court allowed the trustee of a bankrupt bread company to have an equitable lien against the homestead of its former president where the *1025 former president embezzled corporate funds to make improvements on his homestead.[10] The Court concluded that the trustee's claims fell within the exceptions to the exemption: "The funds involved in this litigation were all spent for labor and improvements on the house which appellee seeks to exempt and are clearly within the qualifications to his homestead as above enumerated." Jones, 106 So. at 130. As in Fishbein, we employed the doctrine of equitable subrogation to accommodate the trustee's claim within the exceptions to the exemption: "Appellant, who steps into the shoes of the bread company, cannot follow said funds or materials into Carpenter's home and recover them, they having been so converted, but he can subject the home to the repayment or restoration of said funds." Id.; see also Greta K. Kolcon, Common Law Equity Defeats Florida's Homestead Exemption, 68 Fla. B.J., Nov. 1994, at 54, 55 ("Equitable subrogation, a sister remedy to the equitable lien, places one party to whom a particular right does not legally belong in the position of the right's legal owner.").[11]
Six years later in Craven v. Hartley, 102 Fla. 282, 135 So. 899 (1931), we again approved the imposition of an equitable lien against homestead property where Hartley loaned Craven money to complete Craven's purchase of a home from a third party in exchange for a promise by Craven that she would execute a mortgage in his favor for the amount loaned as security. Craven, however, failed to execute the mortgage to Hartley once she secured her deed and Hartley then filed suit obtaining an equitable lien against Craven's home and a judicial sale to satisfy the amount loaned. Craven then filed suit seeking to have her land declared exempt from judicial sale as her homestead. We phrased the issue as follows: "It is agreed by both parties that the sole question presented here is whether or not under the facts stated the loan of $625 can be held to be an obligation `contracted for the purchase of said property' within the terms of section 2 of article 11 of the Constitution relating to married women's property." Id. at 900.
The Court followed Jones, once again invoking equitable principles to countenance Hartley's claim within the exceptions:
[W]hen she borrowed the $625 from appellee and made the final payment thereon, the said loan to all intents and purposes became the price of property purchased by her, and that said lands immediately became charged in equity for the payment of said loan.
When appellant declined to execute the mortgage according to her promise, appellee was within his rights in seeking *1026 to have an equitable lien impressed on said lands under the doctrine announced by this court in Jones v. Carpenter, 90 Fla. 407, 106 So. 127, 43 A.L.R. 1409. This holding is in harmony with spirit and terms of section 1 of article 10 of the Constitution relating to homestead exemptions, as it is there provided that no property shall be exempt from any contract for the purchase price thereof, nor can the homestead exemption supersede prior judgments or liens. Pasco v. Harley, 73 Fla. 819, 75 So. 30 [Fla.1917].
Hartley, 135 So. at 901.
In LaMar v. Lechlider, 135 Fla. 703, 185 So. 833 (1939), we again allowed an equitable lien where the plaintiffs made valuable improvements to the defendant's homestead with the understanding that they were acquiring an interest therein. Recognizing, as we did in Jones, that the plaintiffs' claims did not come within the literal terms of the exemption, we nonetheless indirectly accommodated their claims within the exceptions to prevent the unjust enrichment of the defendant:
This Court holds that the lien of plaintiffs is enforceable against the homestead of defendants, upon the theory that since the plaintiffs have innocently, and in the belief that they had the right to do so, with the consent of the holder of the legal title, placed on his land permanent and valuable improvements, it would be inequitable to permit the owner to retain the improvements without compensating the parties who placed them there for their reasonable value; that so to permit him to retain them would be unjustly to enrich him.
LaMar, 185 So. at 836.
Similarly, in Sonneman v. Tuszynski, 139 Fla. 824, 191 So. 18 (1939), we imposed an equitable lien in favor of the plaintiff, an elderly woman who advanced the defendant money and domestic services which the defendant used to purchase and operate a tourist camp with the understanding that the defendant would take care of her for the remainder of her life. The defendant reneged on that promise and we allowed an equitable lien against the defendant's tourist camp, concluding that the plaintiff was entitled to the same on the strength of the money and sweat equity she invested in the property:
It may be reasonably inferred from the testimony adduced in this case that the money advanced by the plaintiff to the defendant was used by him in purchasing the tourist camp near Tampa during the month of January, 1934. Her services and labor were factors that aided the defendant in accumulating the money placed into the tourist camp and it appears from the evidence that an equitable lien exists in her behalf on the tourist camp property for the money advanced and the work and labor by her performed for the defendant.
Id. at 20.
The petitioner argues that this Court through its equitable lien jurisprudence has created a fourth exception to the homestead exemption excepting homesteads claimed in the furtherance of fraud from the protection of article X, section 4. The petitioner is not alone in this belief. See In re Tabone, 247 B.R. 541, 544 (Bkrtcy.M.D.Fla.2000) ("[T]he Florida Supreme Court has already engrafted an exception to the homestead provision in the Florida Constitution in order to prevent unjust enrichment."); In re Lazin, 221 B.R. 982, 988 (Bkrtcy.M.D.Fla.1998) (reading Fishbein to create fourth exception where nonexempt funds are fraudulently obtained and used to acquire a homestead or pay off a mortgage on the homestead).
In fact, several bankruptcy courts have relied on Fishbein and the cases preceding it to deny homestead claims or impose *1027 equitable liens where the evidence established that the transfer of assets to the homestead was accomplished with the intent to shield assets from creditors or with fraudulently obtained assets. See In re Tabone, 247 B.R. 541 (M.D.Fla.2000) (denying homestead exemption to the extent the homestead was purchased with funds impermissibly converted from nonexempt to exempt assets); In re Grocki, 147 B.R. 274 (S.D.Fla.1992) (imposing equitable lien against debtor's homestead where funds used by debtor to acquire homestead could be traced to those fraudulently obtained from plaintiff creditor); In re South Florida Title, Inc., 104 B.R. 489 (S.D.Fla.1989) (imposing equitable lien in favor of bankruptcy trustee where debtors used improperly appropriated corporate funds to satisfy mortgage on homestead); In re Gherman, 101 B.R. 369 (S.D.Fla.1989) (denying homestead exemption where debtor used funds stolen to acquire exempt property); see also In re Pomerantz, 215 B.R. 261 (S.D.Fla.1997) (denying debtor's discharge from bankruptcy where evidence established that debtor, a New York resident, transferred nonexempt assets into a Florida homestead for the purposes of defrauding creditor); In re Bandkau, 187 B.R. 373 (M.D.Fla.1995) (denying homestead exemption to the extent debtors converted nonexempt assets into the homestead for purposes of shielding their assets from a creditor); In re Coplan, 156 B.R. 88 (M.D.Fla.1993) (denying homestead exemption to Wisconsin residents who moved to Florida and purchased homestead shortly before their business filed for bankruptcy to the extent the debtors received a greater benefit under Florida law than would have been available to them under Wisconsin's exemption laws).
Nevertheless, in Caggiano we cautioned that our equitable lien jurisprudence should not be read too broadly:
All of the cases cited by the State where a court has actually imposed a lien on the homestead in question, however, are either factually or legally inapposite. Virtually all of the relevant cases involve situations that fell within one of the three stated exceptions to the homestead provision. Most of those cases involve equitable liens that were imposed where proceeds from fraud or reprehensible conduct were used to invest in, purchase, or improve the homestead. See, e.g., Jones v. Carpenter, 90 Fla. 407, 415, 106 So. 127, 130 (1925); La Mar, 135 Fla. 703, 711, 185 So. 833, 836. Other relevant cases cited involve situations where an equitable lien was necessary to secure to an owner the benefit of his or her interest in the property. See, e.g., Tullis v. Tullis, 360 So.2d 375, 377 (Fla.1978) ("We hold, with the First District, that our constitutional provisions allow the partition and forced sale of homestead property upon suit by one of the owners of that property, if such partition and forced sale is necessary to protect the beneficial enjoyment of the owners in common to the extent of their interest in the property."). In particular, Tullis involved a marital situation with joint homestead property. In no other case has this Court imposed a lien on a homestead beyond one of the three stated exceptions in the constitutional provision. The Court in Bessemer [v. Gersten] specifically did not address the issue of whether the lien came within one of the stated exceptions to the homestead exemption. 381 So.2d [1344] at 1347 n. 1 [(Fla.1980)].
Caggiano, 605 So.2d at 60 n. 5. We reiterated that position in Tramel in rejecting the State's attempts to extend our holding in Fishbein to allow the forfeiture of homestead property and do so again today. Tramel, 697 So.2d at 824; see also Smith v. Smith, 761 So.2d 370, 373 (Fla. 5th DCA *1028 2000) ("[T]he supreme court has limited the exception allowing an equitable lien on homestead to those cases where the owner of the property has used the proceeds from fraud or reprehensible conduct to either invest in, purchase, or improve the homestead.").
Moreover, although we have not had the occasion to answer the precise question before us today, we have previously intimated that the use of the homestead exemption to shield assets from the claims of creditors is not conduct sufficient in and of itself to forfeit the exemption under the express terms of article X, section 4.
In Heddon v. Jones, 115 Fla. 19, 154 So. 891 (1934), Heddon loaned Jones money, taking as security a mortgage on property owned by Jones. Id. at 891. Jones defaulted on the mortgage and Heddon brought suit thereon. Shortly after the suit was initiated, Jones acquired title to property distinct from the aforementioned property mortgaged to Heddon. Id. Jones claimed this new property on which he had previously held only a purchase money mortgage, as his homestead. Id. Heddon contended that Jones did so "for the express purpose of defrauding [him] by acquiring a homestead right in the property before [he] could reduce his $6,000 debt to judgment." Id. We rejected Heddon's claims and explained:
The fact that the appellee may have moved on the homestead property prior to judgment for the express purpose of "homesteading" it is not legal fraud which per se affords ground for holding the homestead claim subordinate to the lien of a judgment rendered in a suit pending prior to the time the homestead character attached.
Id.
We reached a similar conclusion in Quigley v. Kennedy & Ely Insurance, Inc., 207 So.2d 431 (Fla.1968), where the Quigleys purchased a vacant tract of land adjacent to their homestead shortly after having a judgment entered against them and declared the additional tract as part of their homestead. This Court allowed the Quigleys' homestead claim to stand, rejecting the Third District's decision to deny the claimed exemption as to the additional tract:
The suggestion of the District Court that a judgment debtor should be restricted to land he already owns as his homestead to prevent him from depositing his funds or surplus out of the reach of his judgment creditor for the purchase of additional homestead lands appears contrary to the clear intent of the homestead provision of the Constitution.
Id. at 433.
In sum, we conclude that we must answer the certified question in the affirmative. The transfer of nonexempt assets into an exempt homestead with the intent to hinder, delay, or defraud creditors is not one of the three exceptions to the homestead exemption provided in article X, section 4. Nor can we reasonably extend our equitable lien jurisprudence to except such conduct from the exemption's protection. We have invoked equitable principles to reach beyond the literal language of the exceptions only where funds obtained through fraud or egregious conduct were used to invest in, purchase, or improve the homestead.[12]

*1029 APPLICABILITY OF SECTIONS 726.105, 222.29, AND 222.30 TO THE HOMESTEAD EXEMPTION
Section 726.105, Florida Statutes (2000), of the Uniform Fraudulent Transfer Act provides in pertinent part:
Transfers fraudulent as to present and future creditors.
(1) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
(a) With actual intent to hinder, delay, or defraud any creditor of the debtor....
The federal courts which have addressed the applicability of section 726.105 to homestead claims have concluded that it has no effect on the constitutionally created homestead exemption. See In re Levine, 134 F.3d 1046, 1051 (11th Cir.1998) (applying section 726.105 to statutorily-exempt annuities in concluding that Florida law's near absolute protection of legally created exemptions relates to "the constitutionally-protected homestead exemption rather than the statutorily-created exemption for annuities."); In re Young, 235 B.R. 666, 671 (Bkrtcy.M.D.Fla.1999) ("Under basic rules of construction, statutory laws enacted by legislative bodies cannot impair rights given under a constitution."). We agree. The legislature is powerless to affect the rights provided under the homestead exemption through statutory enactments. See Osterndorf v. Turner, 426 So.2d 539, 544 (Fla.1982) (quoting Sparkman v. State ex rel. Scott, 58 So.2d 431, 432 (Fla.1952)) ("Express or implied provisions of the Constitution cannot be altered, contracted or enlarged by legislative enactments."). Accordingly, we reach the same conclusion as to sections 222.29 and 222.30.[13]

*1030 CONCLUSION
Accordingly, we answer the certified question in the affirmative, holding that a homestead acquired by a debtor with the specific intent to hinder, delay, or defraud creditors is not excepted from the protection of article X, section 4. Having answered the certified question, we return this case to the United States Court of Appeals for the Eleventh Circuit for further proceedings.
It is so ordered.
WELLS, C.J., and HARDING, PARIENTE, LEWIS and QUINCE, JJ., concur.
ANSTEAD, J., dissents.
NOTES
[1] Hill also claimed that household furnishings in the Destin property worth approximately $75,000 were exempt because he owned the furnishings in tenancy by the entireties with his wife. Hill purchased the furnishings shortly before moving into the Destin property with funds drawn from a Florida bank account held jointly with his wife and from Hill's individual accounts in Florida and Tennessee.
[2] The Eleventh Circuit affirmed the denial of Havoco's objection to Hill's claimed tenancy-by-the-entireties exemption for the household furnishings in the Destin property, holding that Havoco needed to attack Hill's transfers of individual property to home furnishings in an adversary proceeding to which Hill's wife could be made a party. Havoco, 197 F.3d at 1140.
[3] An amicus brief in support of Havoco was filed on behalf of the Florida Bankers Association, Florida Retail Federation, NACM of Florida, Inc., and NACM Florida Gulf Coast Unit, Inc.
[4] As similarly noted by the Southern District in confronting a similar claim by a creditor: "[A]lthough this Court is reluctant to place its imprimatur upon conduct which, beyond question, was an effort to delay, hinder, or defraud, it is obligated to follow Article X, Section 4(a) of the Florida Constitution." Bank Leumi Trust Co. v. Lang, 898 F.Supp. 883, 889 (S.D.Fla.1995).
[5] In Olesky v. Nicholas, 82 So.2d 510, 513 (Fla.1955), this Court stated: "We find no difficulty in holding that the Florida constitutional exemption of homesteads protects the homestead against every type of claim and judgment except those specifically mentioned in the constitutional provision itself...."
[6] "Forfeitures are considered harsh penalties that are historically disfavored in law and equity, and courts have long followed a policy of strictly construing such statutes." Butterworth v. Caggiano, 605 So.2d at 58.
[7] In Tramel, the First District certified the following question to this Court: "Whether article X, section 4, Fla. Const., prohibits civil forfeiture of homestead property pursuant to sections 932.701-.702, Fla. Stat., when the proceeds of illegal activity are invested in or used to purchase the property?" Tramel, 697 So.2d at 822.
[8] This Court referred the issue raised by Tramel to the Constitutional Revision Commission, stating:

Certainly, there are compelling reasons to support the forfeiture of homestead property "acquired or improved" with funds obtained through felonious criminal activity or homestead property used in the commission of felonious criminal activity. As well, the homestead protection should not be used to shield fraud or reprehensible conduct. However, to permit the State to forfeit a homestead based upon this criminal activity in Florida requires a constitutional revision. We call this to the attention of the Constitutional Revision Commission.
Tramel, 697 So.2d at 824 (citation and footnote omitted). Such an amendment was considered by the 1997-98 Constitutional Revision Commission, as was an amendment to article X, section 4, which would have provided: "The homestead exemption in this section does not apply to any property to the extent that it is acquired with the intent to defraud creditors." Journal of the 1997-1998 Florida Constitutional Revision Commission, Proposal 70, Amendment 7. That amendment was rejected by the Commission by a 24 to 7 vote.
[9] The Langs, between August 1990 and October 1990, also purchased approximately $500,000 in annuities. Bank Leumi, 898 F.Supp. at 884. Bank Leumi challenged the Langs' statutory exemption claim as to the annuities in addition to their claim of an exemption for their homestead. Id.
[10] As to the remedy of an equitable lien, the Jones court explained:

An equitable lien is not an estate or property in the thing itself nor a right to recover the thing; that is, a right which may be the basis of a possessory action. It is neither a jus ad rem nor a jus in re. It is simply a right of a special nature over the thing, which constitutes a charge or incumbrance upon the thing, so that the very thing itself may be proceeded against in an equitable action, and either sold or sequestered under a judicial decree, and its proceeds in the one case, or its rents and profits in the other, applied upon the demand of the creditor in whose favor the lien exists. It is the very essence of this condition that while the lien continues the possession of the thing remains with the debtor or the person who holds the proprietary interest subject to the incumbrance.
Jones, 106 So. at 129.
[11] Black's Law Dictionary defines equitable subrogation as "[s]ubrogation that arises by operation of law or by implication in equity to prevent fraud or injustice." Black's Law Dictionary 1440 (7th ed.1999).
[12] We recognize that several District Courts have allowed equitable liens beyond the exceptions provided under article X, section 4 where a husband has used the homestead exemption to avoid his alimony and child support obligations. See Brose v. Brose, 750 So.2d 717 (Fla. 2nd DCA 2000); Rosenblatt v. Rosenblatt, 635 So.2d 132 (Fla. 3d DCA 1994); Radin v. Radin, 593 So.2d 1231 (Fla. 3d DCA 1992); Gepfrich v. Gepfrich, 582 So.2d 743 (Fla. 4th DCA 1991); cf. Smith v. Smith, 761 So.2d 370 (Fla. 5th DCA 2000); Isaacson v. Isaacson, 504 So.2d 1309 (Fla. 1st DCA 1987). We express no opinion as to the validity of this approach.
[13] Chapter 222 governs the methods of setting apart homesteads and exemptions. Section 222.29, Florida Statutes (2000), provides:

222.29 No exemption for fraudulent transfers.
An exemption from attachment, garnishment, or legal process provided by this chapter is not effective if it results from a fraudulent transfer or conveyance as provided in chapter 726.
Section 222.30, Florida Statutes (2000), provides in pertinent part:
222.30 Fraudulent asset conversions.
(1) As used in this section, "conversion" means every mode, direct or indirect, absolute or conditional, of changing or disposing of an asset, such that the products or proceeds of the asset become immune or exempt by law from claims of creditors of the debtor and the products or proceeds of the asset remain property of the debtor. The definitions of chapter 726 apply to this section unless the application of a definition would be unreasonable.
(2) Any conversion by a debtor of an asset that results in the proceeds of the asset becoming exempt by law from the claims of a creditor of the debtor is a fraudulent asset conversion as to the creditor, whether the creditor's claim to the asset arose before or after the conversion of the asset, if the debtor made the conversion with the intent to hinder, delay, or defraud the creditor.
Several federal courts have concluded that sections 222.29 and 222.30 cannot expand or limit the scope of the exceptions provided in the Constitution. See In re Hendricks, 237 B.R. 821, 825 (Bkrtcy.M.D.Fla.1999); In re Clements, 194 B.R. 923, 925 (Bkrtcy.M.D.Fla. 1996); see also David E. Peterson et al., Is the Homestead Subject to the Statute on Fraudulent Asset Conversions? 68 Fla. B.J., Dec. 1994, at 12, 12 ("The statute does not and cannot affect the conversion of nonexempt assets to homestead because the debtor's right to exempt his or her homestead arises solely under the Florida Constitution and, therefore, supersedes any attempt by the legislature to deprive the debtor of the ability to exempt his or her homestead through general legislation."). but see In re Thomas, 172 B.R. 673, 674 (Bkrtcy.M.D.Fla.1994) ("The 1993 amendments to the Florida Statutes, § 222.29-.30, bar homestead exemptions resulting from `fraudulent asset conversions' those made by the debtor `with intent to hinder, delay, or defraud the creditor.'").