IN RE: Ronald BIFANI, Debtor.

Shari Streit Jansen, as Chapter 7 Trustee, Plaintiff,

v.

Arlene M. LaMarca, Defendant.

Case No. 8:12–bk–00562–MGW

Adv. No. 8:12–ap–00288–MGW

United States Bankruptcy Court, M.D. Florida Tampa Division

July 12, 2013.

Benjamin G. Martin, Law Offices of Benjamin Martin, Sarasota, FL, for Defendant.

Lori V. Vaughan, Trenam Kemker, Tampa, FL, for Plaintiff.

Chapter 7

## ORDER GRANTING IN PART TRUSTEE'S MOTION FOR SUMMARY JUDGMENT

Michael G. Williamson, United States Bankruptcy Judge

THIS PROCEEDING came before the Court on January 28, 2013, at 10:30 a.m., on the Chapter 7 Trustee's Motion for Summary Judgment.[1] According to the Trustee's summary judgment motion, the undisputed facts show that she is entitled to summary judgment as a matter of law on her claims to (i) avoid and recover the fraudulent transfer of two parcels of real property located in Colorado (Counts I–VI); and (ii) impose an equitable lien on real property in Sarasota, Florida, that was purchased using the proceeds from the sale of one of the Colorado properties (Count VII). The Court agrees. For the reasons discussed below, the Court will grant summary judgment in part in favor of the Trustee on her fraudulent transfer and equitable lien claims.[2]

### Undisputed Facts

The Debtor was a builder and developer of single-family homes in Breckenridge, Colorado. He met the Defendant, Arlene LaMarca, sometime in 2000. About two years after they met, the Debtor and LaMarca began living together in a house the Debtor owned at 207 North Ridge Street, Breckenridge, Colorado. The Debtor eventually quitclaimed that property to LaMarca in August 2006.[3]

At the time the Debtor transferred the Breckenridge property to LaMarca, it was encumbered by a $450,000 mortgage securing a line of credit the Debtor had taken out with Wells Fargo Bank. The Debtor apparently used the line of credit to finance the construction of various houses he built. The Debtor and LaMarca continued to live together in the Breckenridge property until February 2009.

In February 2009, LaMarca sold the Breckenridge property for $955,000.[4] At the closing, LaMarca was required to pay off the $450,000 mortgage held by Wells Fargo.[5] The closing costs were also deducted from the gross sales proceeds. In the end, LaMarca received $341,297.57 in net sales proceeds.[6] LaMarca split the $341,297.57 net sales proceeds evenly with

---

1. Adv. Doc. No. 39. The Court tentatively ruled at the conclusion of the January 28 summary judgment hearing. The Court, however, gave the parties an opportunity to mediate this proceeding before the Court formally issued its ruling. The parties were unable to resolve the dispute between them at mediation. As a consequence, it is now appropriate for the Court to rule on the Trustee's summary judgment motion.

2. At the conclusion of the January 28 summary judgment hearing, the Court gave the parties an opportunity to brief an evidentiary issue relating to the admissibility of the Debtor's Rule 2004 exam testimony on summary judgment. The Court, however, concludes that testimony is unnecessary to its ruling at summary judgment. So the Court declines to rule on that evidentiary issue.

3. Adv. Doc. No. 36–2 at 1.

4. Adv. Doc. No. 36–2 at 2–4.

5. *Id.* at 4.

6. *Id.*

the Debtor. So the Debtor and LaMarca each received approximately $171,000 from the sale of the Breckenridge property.[7]

Four months later, the Debtor transferred two more properties to LaMarca. One property was located at 1400 Golden Eagle Road, Silverthorne, Colorado; the other was located at 988 Bald Eagle Road, Silverthorne, Colorado. Those properties were encumbered by a $242,700 mortgage. On the same day he transferred the Silverthorne properties to LaMarca, the Debtor also executed an amended promissory note in the amount of $126,867.93 in favor of LaMarca that purportedly memorialized the Debtor's obligation to repay amounts LaMarca had previously advanced him in March 2008.[8]

LaMarca sold the Golden Eagle Road property three months later for $970,000.[9] LaMarca was required to pay off the $242,700 mortgage on the Golden Eagle Road property at closing.[10] After paying off that mortgage (and paying closing costs), LaMarca received $669,233.29 in net sales proceeds. LaMarca then used the nearly $670,000 in net sales proceeds from the Golden Eagle Road property to buy a house located at 101 Garden Lane, Sarasota, Florida, for $650,000 in September 2009.

While all of these transfers were taking place, the Debtor was a defendant in a pending state-court lawsuit in Colorado filed by Richard Davis (the Debtor's former business partner). That lawsuit, which was originally filed in May 2001, sought damages for breach of a mediated settlement agreement. The state court initially dismissed Davis' complaint, but that decision was reversed on appeal and remanded to the state court on November 11, 2008. The state court docket reflects that on June 12, 2009—one week before the Debtor transferred the Silverthorne properties to LaMarca—the state court entered an order scheduling a telephonic status conference (in light of the remand). The state court ultimately entered a $166,750.15 final judgment against the Debtor on December 12, 2011.

One month after the judgment was entered, the Debtor filed for chapter 7 bankruptcy. In his schedules, the Debtor listed a total of $286,158.93 in claims (secured and unsecured) and $35,437 in assets. A total of nine proofs of claim—totaling $448,374.56—have since been filed in this case. One of those claims was filed by Davis. Another three claims were filed by LaMarca. One of those claims—in the amount of $126,868—was on the promissory note.[11] The Trustee filed this adversary proceeding on April 11, 2012, to avoid and recover the transfer of the Silverthorne properties and impose an equitable lien on the house LaMarca purchased in Sarasota with the proceeds from the sale of the Golden Eagle Road property.

The Trustee now claims that she entitled to judgment as a matter of law on her fraudulent transfer and equitable lien claims.[12] According to the Trustee, it is undisputed that the Debtor transferred

---

7. *Id.* at 6.

8. On March 18, 2008, LaMarca loaned the Debtor $101,867.93. Ten days later, she loaned him another $30,122.

9. Adv. Doc. No. 36–2 at 22.

10. *Id.* at 23. That mortgage also encumbered the Bald Eagle Road property. So after the sale of the Golden Eagle Road property, La-Marca owned the Bald Eagle Road property free and clear.

11. She also filed two other claims in the amount of $36,489.50 each.

12. Adv. Doc. No. 39.

the Silverthorne properties with the actual intent to hinder, delay, or defraud his creditors and that LaMarca used the proceeds from that fraudulent transfer to purchase her Sarasota home. LaMarca says summary judgment is inappropriate because the Debtor was not insolvent at the time of the transfers.[13]

### Conclusions of Law [14]

■ The Trustee need not show that the Debtor was insolvent if she can prove that the Debtor had the actual intent to hinder, delay, or defraud his creditors.[15] To prevail on her fraudulent transfer claim under section 726.105(1)(a), the Trustee need only prove that (i) the Debtor transferred property within four years of filing his bankruptcy case; and (ii) the transfer was made with the actual intent to hinder, delay, or defraud any creditor.[16] There is no dispute that the Debtor transferred property within four years of this bankruptcy case. So that leaves the "actual intent" element.

■ As this Court recognized in *In re McCarn's Allstate Finance, Inc.*, actual fraud "is seldom proven by direct evidence." [17] Instead, it is often proven through circumstantial evidence. To determine whether circumstantial evidence supports a finding of actual intent, courts looked to the badges of "fraud" adopted by the Eleventh Circuit.[18] Those "badges of fraud" are codified in Florida's fraudulent transfer statute.[19] While the presence of the one of the badges of fraud—by itself—

may only amount to a suspicion of actual intent, the presence of multiple badges of fraud justifies a finding of actual intent to hinder, delay, or defraud.

■ Here, several of the badges of fraud are present. For starters, the Debtor transferred the Silverthorne properties to the functional equivalent of an insider. The Debtor had lived with LaMarca for close to seven years at the time of the transfer (and still lives with her). Moreover, the Debtor has—at least in some respects—maintained control of the property after it was transferred. After all, LaMarca purchased the Sarasota home with the proceeds from the Golden Eagle Road property, and it is undisputed the Debtor has been living with LaMarca at that house ever since. At the time the Debtor transferred the Silverthorne properties to LaMarca, there was a lawsuit pending against him. In fact, just one week before the transfers, the state court scheduled a status conference to discuss the status of the case in light of an appellate ruling against the Debtor. Finally, the Debtor did not receive reasonably equivalent value for the transfers.

■ On that last point, LaMarca contends she did provide reasonably equivalent value in exchange for the Silverthorne properties. Specifically, LaMarca claims the property was transferred to her as payment for over $900,000 in loans she made to the Debtor. Those purported

---

13. Adv. Doc. No. 56.

14. The Court has jurisdiction over this contested matter under 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(H). The parties have consented to the Court's entry of a final judgment in this proceeding for purposes of 28 U.S.C. § 157(c)(2).

15. § 726.105(1)(a), Fla. Stat.

16. *Id.*

17. *In re McCarn's Allstate Finance, Inc.*, 326 B.R. 843, 849 (Bankr.M.D.Fla.2005) (quoting *In re Toy King Distrib.*, 256 B.R. 1, 126 (Bankr.M.D.Fla.2000)).

18. *Id.* (citing *In re Levine*, 134 F.3d 1046, 1053 (11th Cir.1998)).

19. § 726.105(2), Fla. Stat.

loans consist of: (i) the $450,000 mortgage on the Breckenridge property that she paid off at the closing of the sale of that property; (ii) the $171,000 she gave him from the proceeds from the sale of the Breckenridge property; (iii) the $242,700 mortgage on the Silverthorne properties that she paid off when she sold the Golden Eagle Road property; and (iv) the $131,000 she loaned the Debtor in March 2008.

There is no credible argument—nor is there any record evidence to suggest—that the $450,000 mortgage payoff, the $171,000 distribution from the sale proceeds, or the $242,700 mortgage payoff were loans. Those were simply encumbrances on property that the Debtor transferred to her for no consideration. The record does, however, reflect that the $131,000 was, in fact, a loan. But the Silverthorne properties were not transferred in consideration of that loan since LaMarca never credited the Debtor for those transfers. In fact, she filed a claim in his bankruptcy case for nearly the entire amount of the $131,000 loan. And in any case, LaMarca realized nearly $670,000 from the sale of the Golden Eagle Road property (plus, she now holds the Bald Eagle Road property free and clear). So there is no genuine issue of material fact that the Debtor did not receive reasonably equivalent value in exchange for the properties.

Because there is no issue of fact that the Debtor transferred property to an insider at the time a lawsuit was pending against him, did not receive reasonably equivalent value in exchange for the transfers, and retained (at least some) control of the property after it was transferred, the Trustee is entitled to summary judgment as a matter of law on her claims under section 726.105(1)(a), Florida Statutes (Counts I and IV). As a consequence, the Court need not decide whether the Debtor was solvent at the time he made the transfers. That leaves for consideration the Trustee's equitable lien claim (Count VII).

 Under Florida law, the court may impose an equitable lien if the general considerations of right and justice dictate that one party has a special right to a particular property and there is an absence of an available lien or no adequate remedy at law.[20] For instance, courts have imposed equitable liens where property—including homestead property—was obtained through ill-gotten proceeds.[21] Here, LaMarca's Sarasota house was acquired with ill-gotten proceeds.

LaMarca used the nearly $670,000 from the sale of the Golden Eagle Road property to purchase her Sarasota house. It would be inequitable and unjust to allow the Debtor to fraudulently transfer property to LaMarca to keep it from his creditors. And now the Debtor is reaping the benefits of that fraudulent transfer by living in the house that LaMarca purchased with the proceeds from the Debtor's fraudulent transfer. The Trustee, therefore, is entitled to summary judgment on her equitable lien claim.

### Conclusion

The undisputed facts of this case fit the classic pattern of most fraudulent transfer cases. The Debtor was engaged in litigation with his former business partner for nearly a decade, and just when that lawsuit appears to be heading toward a judgment against him, the Debtor transfers nearly all of his property to a close friend he had been living with for years. His friend then sells some of the property the

---

**20.** *Maurer v. Maurer (In re Maurer)*, 267 B.R. 639, 652 (Bankr.M.D.Fla.2001).

**21.** *Id.* (citing *Havoco of Am., Ltd. v. Hill*, 790 So.2d 1018, 1026–28 (Fla.2001); *Palm Beach Sav. & Loan Ass'n v. Fishbein*, 619 So.2d 267, 269 (Fla.1993)).

Debtor transferred to her and invests it in homestead property in Florida. On those undisputed facts, the Trustee is entitled to partial summary judgment as a matter of law on her fraudulent transfer and equitable lien claims. Accordingly, it is

**ORDERED:**

1. The Trustee's Motion for Summary Judgment is GRANTED in part.

2. The Trustee is entitled to final judgment as a matter of law on Counts I, IV, and VII of her complaint.

3. The Trustee's Motion for Summary Judgment is DENIED AS MOOT as to Counts II, III, V & VI of her complaint.

4. The Court will enter a separate final judgment.

**DONE** and **ORDERED.**