[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-12042
Non-Argument Calendar
_____

D.C. Docket No. 0:11-cv-61072-RNS

FEDERAL TRADE COMMISSION,

Plaintiff - Appellee,

versus

AMERICAN PRECIOUS METALS, LLC,
a Florida limited liability company, et al.,

Defendants,

SAM J. GOLDMAN,
a.k.a. Sammy Joe Goldman,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(March 1, 2018)

Before WILSON, JORDAN, and NEWSOM, Circuit Judges.

PER CURIAM:

The Federal Trade Commission brought this action against Sam Goldman and others for operating a deceptive investment scheme in violation of Section 5(a) of the Federal Trade Commission Act, 15 U.S.C. § 45(a), and the FTC's Telemarketing Sales Rule, 16 C.F.R. Part 310.  Goldman entered into a stipulated final judgment with the FTC, agreeing, among other things, to pay $24.4 million as equitable monetary relief.  When Goldman failed to pay that amount, the FTC filed a motion seeking to have an equitable lien placed on his homestead property.  The district court entered a final order granting the FTC's motion.  On appeal, Goldman argues that the district court's order should be vacated because the court (1) relied on inadmissible evidence in granting the motion and (2) refused his request for an evidentiary hearing.  We affirm.

**I**

In 2011, the FTC filed a complaint against American Precious Metals, LLC and two of its principals for operating a deceptive investment scheme in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), and the FTC's Telemarketing Sales Rule, 16 C.F.R. Part 310.  The FTC later amended the complaint to add Sam Goldman as a defendant.  The first amended complaint alleged that between 2007 and 2011, the defendants hired telemarketers to cold-call people—many of whom

2

were senior citizens—and persuade them that they could earn large profits quickly by investing in precious metals. While customers were led to believe that the defendants were investing their money in actual precious metals in the form of bars, bullion, or coins, the defendants were in fact pocketing about 40% of the money for themselves and then investing the rest in risky, highly leveraged derivatives. All told, the defendants collected more than $24 million from unsuspecting customers.

Goldman ultimately did not contest the FTC's allegations, and in 2012 the district court issued a stipulated final judgment and permanent injunction. The judgment, to which Goldman agreed, provided that "the facts as alleged in the First Amended Complaint filed in this action shall be taken as true without further proof in any … subsequent civil litigation pursued by the [FTC] to enforce its rights to any payment or money judgment pursuant to this Final Order." Among other things, the judgment required Goldman to pay $24,372,491 in equitable monetary relief.

By January 2017, the FTC had collected only a fraction of that judgment: $372,573.79. It therefore filed a motion seeking to have an equitable lien placed on Goldman's homestead property. Goldman opposed the motion. The district court entered an order declaring an equitable lien on Goldman's homestead

3

property for $428,604.95, which was the amount that could be traced to the fraudulent conduct. This is Goldman's appeal of that order.

## II

The Florida Constitution provides that "no judgment, decree or execution shall be a lien" on "a homestead." Fla. Const. art. X, § 4(a)(1). The Florida Supreme Court "has long emphasized that the homestead exemption is to be liberally construed in the interest of protecting the family home." *Havoco of Am., Ltd. v. Hill*, 790 So. 2d 1018, 1020 (Fla. 2001). The homestead exemption should not, however, "be so applied as to make it an instrument of fraud or imposition upon creditors." *Id.* "[W]here equity demands it," the Florida Supreme Court "has not hesitated to permit equitable liens to be imposed on homesteads." *Palm Beach Sav. & Loan Ass'n v. Fishbein*, 619 So. 2d 267, 270 (Fla. 1993). To obtain an equitable lien on a Florida homestead, a plaintiff must show by a preponderance of the evidence (1) that the defendant engaged in fraudulent or egregious conduct and (2) that the funds from that conduct can be directly traced to the purchase of, investment in, or improvement of the homestead. *In re Fin. Federated Title & Trust, Inc.*, 347 F.3d 880, 888 (11th Cir. 2003).

Here, the district court concluded that the FTC had satisfied both requirements. The first requirement was met because in the stipulated final judgment, Goldman had agreed that the allegations of fraudulent conduct in the

4

first amended complaint would be taken as true in any later collection action. As to the second requirement, the court concluded that the FTC had met its burden of tracing the funds by submitting with its motion the declaration of Melissa Davis, an independent forensic accountant. Davis's declaration listed her qualifications, stated her methodology, and explained her analysis of Goldman's bank accounts. Davis ultimately concluded that $428,604.95 of the funds that Goldman had used to pay for his mortgage and other expenses related to his homestead property between August 10, 2007 and May 14, 2014 were fraudulently obtained.

The court concluded that "the FTC's motion, along with Davis's declaration and supporting materials, sufficiently establishes that Goldman used fraudulently obtained funds for the investment, purchase or improvement of his homestead." It therefore granted the FTC's motion and imposed an equitable lien on Goldman's homestead property.

## A

Goldman first contends that the district court should not have considered Davis's declaration because it was inadmissible under Federal Rule of Evidence 1006. We review the district court's decision to accept Davis's declaration as evidence for abuse of discretion. *See Adams v. Lab. Corp. of Am.*, 760 F.3d 1322, 1327 (11th Cir. 2014).

Goldman's contention rests entirely on his assertion that Davis's declaration was submitted as a "summary, chart, or calculation" under Federal Rule of Evidence 1006, which provides:

> The proponent may use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court.  The proponent must make the originals or duplicates available for examination or copying, or both, by other parties at a reasonable time and place.  And the court may order the proponent to produce them in court.

Fed. R. Evid. 1006.  Goldman's theory appears to be that Davis's declaration is merely a summary of his bank records, which according to Goldman, cannot form the basis of a summary under Rule 1006 because they are inadmissible hearsay, and in any event, they were not made available for his inspection.

Contrary to Goldman's assertion, Davis's declaration is not a "summary, chart, or calculation" under Rule 1006.  Although Davis reviewed Goldman's bank records in conducting her analysis, her declaration was not offered to "prove the content" of Goldman's bank records (or any other records, for that matter).  Instead, it was offered to present her expert conclusions to the district court.  Specifically, she conducted a tracing analysis to determine whether Goldman used any fraudulently-obtained funds to pay his mortgage or other expenses related to his home, and the district court accepted her conclusions.  We therefore reject Goldman's argument that the district court relied on Rule 1006 in accepting Davis's declaration.

6

Goldman has not offered any other argument challenging the admissibility of Davis's declaration.  Here, as in the district court, he does not challenge her credentials or methodology, nor does he point to any factual errors in her conclusions.  Accordingly, we reject Goldman's argument that the district court abused its discretion in accepting Davis's declaration as evidence.

**B**

Goldman next argues that the district court "was required to conduct an evidentiary hearing."  Although Goldman requested an evidentiary hearing in his opposition to the FTC's motion, the district court denied that request, concluding that "Goldman has not established that there are any disputed facts that would warrant an evidentiary hearing."  The court explained that Goldman's opposition to the FTC's motion did not "include a single factual allegation to rebut Davis's tracing analysis."  The court further explained that Goldman had requested two extensions of time to respond to the FTC's motion.  In the first, he stated that the FTC had "filed a voluminous amount of documents in support of its Motion for Equitable Lien, requiring Defendant, Goldman to: (1) hire his own forensic accountant to rebut the FTC's forensic accountant's report; (2) file affidavits rebutting facts asserted by the FTC; and (3) submit supporting documents."  In the second request, Goldman stated that he was "still preparing his Affidavit, and may need to retain the services of a Forensic Accountant to complete his affidavit."

7

Although the court granted both of those requests, Goldman ultimately did not file any affidavit, forensic accountant report, or other supporting documentation with his opposition to the FTC's motion. The court therefore concluded that "a hearing is not necessary."

On appeal, Goldman has cited to no authority suggesting that an evidentiary hearing was required in these circumstances. Even in the criminal law context, evidentiary hearings on post-trial matters are not always required, and a district court's ruling as to whether a hearing should be held is reviewed only for abuse of discretion. *See, e.g., United States v. Dynalectric Co.*, 859 F.2d 1559, 1580 (11th Cir. 1988). It is not an abuse of discretion to refuse to hold an evidentiary hearing where there are no factual disputes. *See, e.g., McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1312–13 (11th Cir. 1998).

We agree with the district court that Goldman's "vague statements"—like his assertion that Davis's declaration contained "a myriad of errors, inaccuracies, and omissions"—were not enough to show a factual dispute that would warrant an evidentiary hearing. Nor was an evidentiary hearing required for the district court to rule on the admissibility of Davis's declaration, as Goldman suggests. *Cf. United States v. Hansen*, 262 F.3d 1217, 1234 (11th Cir. 2001) (recognizing that district courts are not required to hold a hearing to determine the admissibility of expert testimony).

8

Goldman also asserts that an evidentiary hearing should have been held because the FTC was required to prove that any fraudulently obtained funds were used to "improve" the homestead property, as opposed to merely "maintaining" it. Goldman's theory is that there is a legal difference between "maintenance" and "improvement," and that only funds used for "improvement" can be counted for purposes of determining the amount of an equitable lien. But the only case he cites for that proposition—*In re Mazon*, 387 B.R. 641 (M.D. Fla. 2008)—does not support it. Indeed, *Mazon* contains no discussion whatsoever of any alleged differences between expenditures to "improve" property and those to "maintain" it.

And in any event, the Florida Supreme Court has explained that an equitable lien is appropriate where fraudulently obtained funds are "used to invest in, purchase or improve the homestead." *Havoco*, 790 So.2d at 1028. Even if Goldman were correct that the expenditures at issue here—mortgage payments, insurance premiums, and other expenses to maintain his property—did not go toward "improvement" of the property, he has not offered any argument as to why those funds were not used to "invest in" or "purchase" the homestead property. We therefore reject Goldman's assertion that an evidentiary hearing was needed to distinguish between "maintenance" and "improvement" payments.

9

## III

For the reasons explained above, we hold that the district court did not abuse its discretion in relying on Davis's declaration when it granted the FTC's motion to impose an equitable lien on Goldman's homestead property.  Nor did it abuse its discretion in denying Goldman's request for an evidentiary hearing because Goldman failed to show there were any disputed issues of fact.

**AFFIRMED.**